**Petition of BERINI.**

No. 491096.

United States District Court
E. D. New York.

June 15, 1953.

Morris E. Vogel, New York City, for petitioner.

Harry Addelson, United States Naturalization Examiner, Brooklyn, N. Y.

GALSTON, District Judge.

The petitioner first came to the United States as a student on August 4, 1938, and on November 29, 1939 took the necessary steps to have his status adjusted on a permanent legal basis. He married a native born United States citizen on February 9, 1947. The petitioner and his wife have two children, both of whom are native born. The petition for naturalization was filed on May 29, 1952 pursuant to the provisions of section 310(b) of the Nationality Act of 1940, as amended, 8 U.S.C.A. § 710(b).

The petitioner, on September 2, 1942, executed Selective Service Form DSS 304, "Alien's Personal History and Statement". Therein he said:

"I do object to service in the land or naval forces of the United States, based on a Swiss Treaty."

This form contained the reservation that the election of the registrant to be relieved from military service would debar him from thereafter becoming a citizen of the United States. On February 7, 1944 he executed Revised Selective Service Form 301, entitled "Application by Alien for Relief from Military Service". This form too contained the application for relief from liability for training and service in the land or naval forces of the United States, and the signature of the registrant followed immediately below. However, this Selective Service Form differed from Form 301 in that below the signature of the registrant appears this printed statement:

"Section 3(a) of the Selective Training and Service Act of 1940, as amended, provides in part 'that any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with the rules and regulations prescribed by the President, but any person who makes such applica-

tion shall thereafter be debarred from becoming a citizen of the United States' ".

The logical inquiry, therefore, is why was Form 301 modified as appears in the Revised Form. Apparently both seek to accomplish the same end in that if the registrant elects to claim immunity from military service, he will be debarred from becoming a citizen of the United States.

The petitioner was relieved from service and did not in fact serve in the armed forces of the United States at any time. There is no question that the petitioner was within the law in seeking to be relieved from service. Prior to doing so, however, he sought the aid of the Legation of Switzerland, for there was an existing treaty between the United States and Switzerland known as The Treaty of Friendship, Commerce and Extradition, of November 25, 1850.

It is important to notice the sequence, then, of the steps which followed. The Swiss Legation, on August 20, 1942, requested of the State Department that the petitioner be granted an unconditional release from the liability of military service in conformity with the aforesaid treaty. On August 31, 1942 the Department of State acknowledged the receipt of the request and referred it to the appropriate agency of the United States Government for further attention. Then on February 1, 1944, the Swiss Legation wrote to the petitioner:

"We are forwarding to you, herewith, two copies of DSS Form 301, *revised,* which kindly execute and file with your Local Board. This action on your part is necessary in order to comply with the exemption procedure; your Local Board, in accordance with Selective Service Regulations, as amended, will then classify you in Class IV–C.

"Please note that, through filing of DSS Form 301, revised, you will not waive your right to apply for American citizenship papers. The final decision regarding your naturalization will remain solely with the competent Naturalization Courts."

Accordingly, the crucial question presented is whether the petitioner is debarred from citizenship by virtue of section 3(a) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 303(a), and section 315 of the Immigration and Nationality Act of December 24, 1952, 8 U.S.C.A. § 1426.

Whether the petitioner is debarred from citizenship by virtue of section 3(a) of the Selective Training and Service Act of 1940, as amended, was, in a case substantially analogous to the instant case, passed on by the Supreme Court in Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 556, 95 L.Ed. 729. In that case it appeared that the petitioner had entered the United States in 1937, returned to Switzerland for service in the Swiss Army, and subsequently returned to this country. He married a United States citizen. There too the petitioner, Moser, sought advice and aid from the Legation of Switzerland in securing his deferment from Selective Service in the United States. The petitioner advised the Local Board that he had taken steps with the Swiss Legation to be released unconditionally from service under the treaty. The Swiss Legation, on receiving the petitioner's request for assistance, communicated with the Department of State. That department referred the request to the Selective Service System, which replied that the Local Board had been instructed to inform petitioner that he might obtain *Revised* Form 301 from the Swiss Legation, to be used in claiming exemption. The Selective Service Headquarters in Washington did so instruct the Director of Selective Service for New York City, and as in the case at bar, the Swiss Legation wrote to the petitioner on February 18, 1944, a letter similar to that which the petitioner in this proceeding received on or about February 1, 1944.

The court reached the conclusion that when Moser signed the application for exemption he believed that he was not thereby precluded from citizenship, and that had he known claiming exemption would debar him, he would not have claimed it. The Supreme Court concluded that in response to the claims of the peti-

tioner and others, "in apparent acquiescence, our Department of State had arranged for a revised procedure in claiming exemption. The express waiver of citizenship had been deleted. Petitioner had sought information and guidance from the highest authority to which he could turn, and was advised to sign Revised Form 301. He was led to believe that he would not thereby lose his rights to citizenship." The Supreme Court, insofar as the footnote to Revised Form 301 is concerned, said:

"A lawyer might have speculated on the possible innuendoes in the use of the phrase 'right to apply,' as opposed to 'right to obtain.' But these are minor distractions in a total setting which understandably lulled *this* petitioner into misconception of the legal consequences of applying for exemption."

The Naturalization Examiner contends that the decision in the Moser case was not intended to be a blank authority for the granting of citizenship indiscriminately to Swiss nationals who sought to be relieved from military service under section 3(a), but on the contrary limited it to circumstances which warranted the conclusion that the petitioner was misled into believing that he could apply for relief and still not be precluded from naturalization. It is argued by the Examiner that the petitioner was enrolled in a school in this country, took both day and night courses so that he could read and write English, and had taken a commercial course in a school in Switzerland; that he had worked in a Swiss bank in the City of New York, and thus in all had a background which should have enabled him to read correctly Revised Form 301. However, his commercial background certainly did not make a lawyer of him, and there is, I think, insufficient reason to believe that he had the power to discriminate any more than did Moser.

The remaining question is whether the 1952 Amendment of the Immigration and Nationality Act of 1952 requires a different result, thus overruling Moser v. United States, supra. The sections of the

Amendment relied upon by the Examiner read as follows:

"Title 8 § 1101. Definitions.

"(19) The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred 'from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 454(a) of Appendix to Title 50, or under any section of this title, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts."

"Title 8, § 1426. Citizenship denied alien relieved of service in armed forces because of alienage; conclusiveness of records

"(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien. June 27, 1952, c. 477, Title III, ch. 2, § 315, 66 Stat. 242."

Even if these sections were retroactive in effect, it would not change the conclusion that as a result of the petitioner's correspondence with the Swiss Legation, of the Legation's correspondence with the State Department and the consequent adoption of Selective Service Form, Revised, 301, the petitioner, when he executed

that form, was of the opinion that he was not being debarred from citizenship.

In passing it may not be without importance to refer to the action of the Board of Immigration Appeals in the matter of the petitions of Hans Rudolph Mauch, A–2202545, and of Werner Fritz Groebli, A–2202546. The report of that board indicates that even after the enactment of the 1952 amendment referred to, the Moser case would be held determinative. Accordingly the applicants were not found ineligible for citizenship.

The petition for naturalization is granted.