Petition for Naturalization of Antonio
PINTO, Jr., Petitioner.
No. 680004.

United States District Court
S. D. New York
June 28, 1957.

Steinberg, Friedman, Blau & Isler,
New York City, Louis Steinberg, New
York City, of counsel, for petitioner.

Howard Cohen, Naturalization Examiner, New York City,

DAWSON, District Judge.

This petition for naturalization is opposed on the ground that the applicant, a Portuguese national, is ineligible for citizenship because during World War II he disqualified himself by filing an application to be relieved from military service in the armed forces of the United States on the basis of alienage.[1]

The Court finds the following facts:

Petitioner, who is a single male, 49 years old, filed a petition for citizenship in this court on September 19, 1956. Petitioner was admitted to the United States for permanent residence on March 6, 1940 and has resided in this country since that date. In October 1940 he registered with his local draft board in Ossining, New York, as required by the Selective Service and Training Act of 1940.[2] In January 1942 he received a notice from the draft board classifying him as 4-C, i. e., an alien who had not filed a declaration of intention.

In January 1942 petitioner, who was then employed as a gardener, received a communication from his local draft board. The petitioner states that he could not read or understand English and

---

1. Immigration and Nationality Act, § 315, 8 U.S.C.A. § 1426(a)

2. 50 U.S.C.A.Appendix § 303(a), now § 454(a).

he asked a Portuguese friend to explain the contents of the communication to him. The friend told him that it concerned military service and that it was necessary to fill out and sign some papers, and that he, the friend, would go with him to the local draft board and assist him. He testified that he had previously told his friend that he was willing to serve in the United States armed forces but was concerned about whether an allotment from his pay could be sent to his widowed mother, residing in Portugal, who was dependent on him for support. He testified that when he arrived at the local board his friend had a conversation in English with one of the officials of the draft board and then gave petitioner a paper to sign, saying that this paper would take care of his mother. He thereupon executed the document, DSS Form 301, which was an application for relief from military service on the ground of alienage and which contained the statement: "I understand that the making of this application to be relieved of such liability will debar me from becoming a citizen of the United States." The petitioner testified that he did not understand the document because of his inability to read or understand English and that he believed the paper was an application for an allotment to his mother in the event of his acceptance into the armed forces. The document was dated July 29, 1942. As a result of the execution of this document the registrant was relieved from military training and service and was classified 4–C. The files of the local draft board show that the petitioner thereafter, and prior to the early part of 1944, had been in communication with his draft board to find out whether, if he was to go into the armed services, his allotment would be payable to his family in Portugal. The local board wrote to State headquarters with reference to petitioner on January 19, 1944, stating in part: "We would like to find out whether, if he were to go into the armed services, his allotment would be payable to his family in Portugal." On January 27, 1944, the local board wrote to the Treasury Department with reference to the petitioner, stating in part: "He wants assurance that if he joins the armed forces of the United States, his dependents will receive his allotment." The draft board files also indicate that a letter written in early 1944 by the petitioner, stated:

"I have had some correspondence with your board in reference to being accepted into the armed services if I could be sure my family in Portugal would receive my allotment from the Government."

The sequence of this correspondence is such that it seems petitioner was making his induction into the armed forces contingent upon the assurance that his family in Portugal would receive his allotment. This evidence indicates an awareness on the part of the petitioner that the form he signed in 1942 was not to get a family allotment and was not, as he testified, preliminary to his imminent induction.

On October 23, 1943, an amendment to the Servicemen's Dependents Allowance Act of 1942 became effective and liberalized the provisions of the Act so that allotments by alien enlisted men could be sent to their families.[3]

On February 3, 1944, petitioner signed DSS Form 165, which is an application for voluntary induction, and was immediately classified 1–A. He was then given notice to report for a physical examination, which he did. He was rejected on this physical examination and classified 4–F. The report of the physical examination indicated that the petitioner spoke Portuguese as well as some English but that he was illiterate and suffering from a severe psychoneurosis. It was because of this severe psychoneurosis that he was deemed disqualified for military service. He was then classified as 4–F.

Thereafter, on September 11, 1946, petitioner executed an affidavit before

---

3.  57 Stat. 577 (1944); now 37 U.S.C.A. § 252.

the Naturalization Examiner in which he stated:

> "I reside at Millwood, N. Y. I filed a form with the draft board asking that I be relieved from military service because of my Portuguese citizenship. I did this because my family in Portugal needed my support. I asked the draft board whether the Army would send them an allotment. She did not know and I could not let my family starve.
>
> "Later on, I learned that allotments are sent to Portugal, and I then went to the draft board and was sent down for induction, but was classified 4–F."

Petitioner contends that he did not "knowingly and intentionally" waive his rights to citizenship when he signed and filed the application to be relieved from military service, because he was at that time illiterate and did not understand the meaning of the document, and that he had been misled by his friend who accompanied him into thinking that the form he signed was merely an application for an allotment for his mother. This friend was not produced as a witness. It was stated that he is now out of the country.

Petitioner testified at the hearing before me and produced several witnesses who swore to his reputation for veracity and honesty.

Petitioner's testimony was that because of his lack of understanding of the English language he did not know that the DSS Form 301 which he signed was a request for exemption from military service or that by signing it he was forever giving up his right to apply for United States citizenship. He states that in January, 1944 he had a conversation in Spanish with two soldiers whom he had met casually. He testified that he told them that he was awaiting a draft call and referred to his prior contact with the draft board. They suggested to him that he probably had applied for exemption from military service on the ground of alienage. Allegedly as a result of this conversation, the petitioner contacted his draft board where the true status of the matter was revealed to him. He testified that in response to this explanation he then filed Form DSS 165 which was an application for voluntary induction. He testified that although he signed the affidavit of September 11, 1946, he did not understand the contents thereof because he could not read English. Petitioner's manner at the hearing and his answers to questions put to him by the Court gave the Court considerable doubt as to his veracity and truthfulness.

Petitioner called as a witness a psychiatrist who testified that based upon his observation of the petitioner and the report of the Army physical examination he was of the opinion that the petitioner in the period 1942 to 1944 was psychoneurotic and as such lacked the capacity to make the election required by a DSS Form 301. Petitioner had an acute conflict, the psychiatrist speculated, resulting from the irreconcilability of two goals: One was supporting his mother, the other was becoming a citizen. When petitioner was called upon to enter the Army in 1942, at a time no financial assistance was available to his family in Portugal, this dilemma was too great for him to consciously resolve. Thus, the psychiatrist continued, in claiming exemption as an alien petitioner blanked out the fact that he was thereby precluded from ever becoming a citizen. In conclusion, the psychiatrist ventured the opinion that if petitioner did execute the DSS Form 301 he lacked the capacity at that time to make an intelligent and knowing choice between citizenship and a deferment.

■■ While petitioner's psychiatric witness advanced an interesting hypothesis, his opinion lacks adequate basis to warrant acceptance. A single interrogation of a patient to determine his mental status fifteen years ago is too remote and constitutes insufficient clinical contact for the resulting opinion to be of high probative value. Nor is this defect remedied by reference to the cryptic no-

tation—Psychoneurosis, Severe—appearing in the pre-induction physical report.

■ If petitioner did not know he was making a choice between service in the armed forces of the United States or being relieved from military service on the basis of alienage, and did not recognize that this election entailed a renunciation of his right to apply for citizenship, then petitioner would not have lost his right to apply for citizenship. The United States Supreme Court has held that to preclude naturalization it is necessary to establish that the alien made a knowledgeable choice in signing a DSS Form 301; only an intelligent election renders an alien ineligible for citizenship under the provisions of the law. Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729. See also Mannerfrid v. United States, 2 Cir., 1952, 200 F.2d 730, certiorari denied, 1953, 345 U.S. 918, 73 S.Ct. 729, 97 L.Ed. 1351.

This motion, therefore, raises an issue of fact as to whether the petitioner in fact knowingly and intentionally elected to avoid service in the armed forces of the United States with knowledge of its consequences, or whether, as he now contends, he executed DSS Form 301 in ignorance of its meaning and effect.

The fact that the alien thereafter apparently had communications with the draft board to ascertain whether, if he were inducted, an allotment would go to his mother in Portugal, and particularly his February 3, 1944, letter to the board, stating that he had some correspondence with the board "in reference to being accepted into the armed services if I could be sure that my family in Portugal would receive my allotment," combined with the fact that he did apply for induction after the law had been amended to permit allotments to families of servicemen of foreign countries, leads the Court to have grave doubt as to the truthfulness of the petitioner in stating that at the time he executed DSS Form 301 he did not know that he was being relieved from military service on the ground of alienage and rendering himself ineligible for citizenship. The sequence of events leads the Court to believe that the petitioner was seeking to negotiate with the board and conditioned his willingness to serve in the armed forces dependent upon whether his mother would receive an allotment. Under the circumstances the Court does not believe that petitioner executed DSS Form 301 in ignorance of its meaning; instead he sought exemption from military service until he was assured that his mother would receive an allotment. The Court finds that the petitioner made a knowledgeable choice between going into the armed forces and claiming exemption on the basis of alienage, with knowledge of the consequences of that choice. See In re Petition of Coronado, D.C.E.D.N.Y.1954, 132 F. Supp. 419, affirmed per curiam, 2 Cir., 1955, 224 F.2d 556; Petition of Miranda, D.C.E.D.N.Y.1953, 111 F.Supp. 481.

The following constitutes the findings of fact and conclusions of law of the Court:

1. Petitioner knew the contents and effect of the DSS Form 301 which he executed in 1942. He knowingly and intentionally waived his rights to citizenship.

2. Petitioner is barred from citizenship by Section 3(a) of the Selective Service and Training Act of 1940 and is ineligible under § 315 of the Immigration and Nationality Act of 1952.

3. Petitioner's motion for naturalization is denied.