**Matter of Rodolfo Erich PLANAS (Koechert).**

No. 97895.

United States District Court
D. New Jersey.

July 8, 1957.

Carpenter, Bennett, Beggans & Morrissey, Jersey City, N. J., for petitioner.

Herman Kaner, U. S. Department of Justice, Immigration & Naturalization Service, Newark, N. J., for Government.

WILLIAM F. SMITH, District Judge.

This matter is before the Court on a petition for naturalization filed by one Rodolfo Erich Planas, also known as Rodolfo Erich Planas Koechert, under the general provisions of the Immigration and Nationality Act of 1952, Section 310 et seq., 8 U.S.C.A. § 1421 et

<br>

seq., and particularly Section 336 thereof, 8 U.S.C.A. § 1447. The denial of the petition is recommended by the Immigration and Naturalization Service on the ground that the petitioner is barred from citizenship because of his having claimed and obtained, as a resident alien and a citizen of a neutral country, exemption from military service under Section 3(a) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 303(a) (1940 ed. Supp. II).* The sole question presented for determination is not entirely free from difficulty.

The recommendation is predicated solely on Section 315(a) of the Immigration and Nationality Act, supra, 8 U.S. C.A. § 1426(a), which reads as follows: "Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or who has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States." It should be noted, however, that the pertinent provisions of the Selective Service and Training Act, supra, reserved to the citizen of a neutral country the right to apply to be relieved from liability for training and service under the Act, but provided: "any person who makes such application shall thereafter be debarred from becoming a citizen of the United States." These provisions are consistent.

### Facts

The petitioner, a native of Germany, but a citizen and subject of Spain, entered the United States on December 3, 1941, accompanied by his wife, a citizen of the United States. Thereafter, following a security investigation, he was admitted for permanent residence. The petitioner continued to reside here, and, on February 14, 1942, registered for compulsory military service as required by Section 1 of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix 302, (1940 ed. Supp. II).** It appears from the records of the Draft Board that the petitioner was initially placed in Classification III–A, apparently because of dependency.

The petitioner was duly noticed to appear before Local Board No. 11 for Essex County, New Jersey, for pre-induction physical examination. This notice was received by him on May 20, 1943. He appeared before the Board on May 22, 1943, three days in advance of the date fixed for the physical examination, and thereupon claimed a right to automatic exemption from military service under a "Treaty of Friendship and General Relations between the United States and Spain," signed at Madrid on July 3, 1902, and proclaimed on April 20, 1903, 33 Stat. 2105.

The petitioner presented in support of his claim to exemption a copy of the pertinent provision of Article V of the said Treaty, which reads as follows: "The citizens or subjects of each of the High Contracting Parties shall be exempt in the territories of the other from all compulsory military service, by land or sea, and from all pecuniary contributions in lieu of such, as well as from all obligatory official functions whatsoever." The claim to automatic exemption was not recognized by the Board.

The petitioner was advised by a representative of the Board that he could avail himself of his right to exemption from military service only upon execution of DSS Form 301, "Application by Alien for Relief from Military Service." This form, a copy of which was submitted to the petitioner, contains in its body, above the signature line, the following language: "I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of

---

\* Now 50 U.S.C.A.Appendix, § 454.

\** Now 50 U.S.C.A.Appendix, § 453.

1940, as amended, in accordance with the act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States." The petitioner objected to the form because of this language and expressed his preference for a revised form which he had seen but which was apparently not available at the office of the Board.

A copy of the revised form, for which the petitioner expressed his preference, is in evidence, Exhibit G–3. The language quoted in the preceding paragraph is omitted in this form and there is substituted therefor the following: "I hereby apply for relief from liability for training and service in the land or naval forces of the United States." There is contained in a footnote, however, this statement: "Section 3(a) of the Selective Training and Service Act of 1940, as amended, provides in part 'that any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States.'" It appears from a letter dated May 27, 1943, addressed to the Board by the petitioner, that he remitted with the letter a copy of the revised form; it should be noted, however, that this form was not executed but was submitted to the Board as a sample of the form preferred by the petitioner.

The petitioner ultimately executed and filed DSS Form 301, supra, on June 1, 1943, ten days after his initial appearance before the Board. He was thereupon granted exemption from military service and was reclassified in Class IV–C. It clearly appears from the evidence, the records of the Board and the transcript of testimony given before the Naturalization Examiner, that he resisted the execution of the said form and

expressed his preference for the revised form until he was finally persuaded to execute and file the former. The petitioner apparently entertained the erroneous notion that if he executed the revised form he would thereby preserve his inchoate right to apply for citizenship notwithstanding his application for exemption from military service. We believe that he was somewhat confused as to his rights under the law.

The petitioner did not testify at this hearing but was content to rely on the testimony given before the Naturalization Examiner, a transcript of which has been marked in evidence Exhibit G–2. He testified before the Examiner that he discussed his problem with the representatives of the Board and thereafter executed DSS Form 301 only after their assurance that the form "made no difference." He did not recall with any degree of certainty the substance of the advice given him but testified that he was led to believe that he might execute the said form and at the same time preserve his right to later apply for citizenship. This was consistent with his belief based on information given to him by neutral aliens of Swiss nationality. We are of the opinion that he may have been justified in relying on the representations made to him by the Board, but he was not justified on relying on information given to him by persons not connected with the Government.

The necessary limits of this opinion will not permit a quotation of all questions and answers appearing in the transcript, but we believe the following are significant:

"Q. With regard to any of these forms, irrespective of what they may have been, would you have signed any such forms, and specifically the DSS 301 form, if you had believed it might deprive you of the right to receive citizenship of the United States? A. I would definitely not have done so, no.

"Q. Did you then believe your right to naturalization was fully protected? A. I was quite convinced of that."

This testimony, considered in the light of the other testimony in the case, would clearly indicate that the petitioner, although intent upon claiming exemption from military service, was equally intent upon preserving his right to later apply for citizenship. The assurances of the Board apparently led him to believe that this could be done.

### Discussion

The petitioner relies on Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 556, 95 L.Ed. 729, and urges that the situation here is comparable to the situation presented in the cited case. There are factual differences which we believe do not change the total picture. The petitioner in the cited case: first, "sought information and guidance from the highest authority to which he could turn, and was advised to sign Revised Form 301;" and second, the Revised Form contained no express waiver of the inchoate right to apply for citizenship. The petitioner in the case sub judice: first presented his problem to the Board and sought its advice, and in this we believe he was justified; and second, signed DSS Form 301, not revised, upon the assurance that the form "made no difference." The failure of the present petitioner to consult the "highest authority" is not determinative because there is no suggestion in the opinion of the Court in the Moser case, supra, that such action is required. The second distinguishing fact becomes unimportant because the Immigration and Naturalization Service concedes that this case should be treated as if the petitioner had signed the Revised Form.

The petitioner in the present case, as did the petitioner in the Moser case, supra, asserted a right to exemption from military service without debarment from citizenship. He continued to assert this right and finally yielded to the persuasion of the Board only after its assurance that the form "made no difference." The petitioner was apparently led to believe that he could execute Form DSS 301, notwithstanding the waiver therein contained, without thereby forfeiting his future right to apply for citizenship. He testified that he would not have claimed exemption if he had thought otherwise.

We are of the opinion that despite the minor differences in the facts of this case and the facts of the Moser case, supra, that the situations are comparable. The Court in the Moser case, supra, after a review of the facts, held at page 47 of 341 U.S., at page 556 of 71 S.Ct.: "* * * because of the misleading circumstances of this case, he [the petitioner] never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all the circumstances of the case, we thing that to bar petitioner, nothing less than an intelligent waiver is required by elementary fairness." We are of the opinion that this principle must be applied here. The circumstances surrounding the present petitioner's application for exemption from military service were misleading and he was thereby denied the opportunity of making the "intelligent waiver" which the Court in the Moser case, supra, held "is required by elementary fairness."

### Conclusion

The petition for naturalization should be granted for the reasons hereinabove stated.