**UNITED STATES of America,
Respondent-Appellant,**

v.

**Otto Klaus Gunther HOELLGER,
Petitioner-Appellee.**

**No. 225, Docket 25376.**

United States Court of Appeals
Second Circuit.

Argued March 13, 1959.

Decided Jan. 13, 1960.

Roy Babitt, Sp. Asst. U. S. Atty., New York City (Arthur H. Christy, U. S. Atty., Southern Dist. of New York, New York City, on the brief), for respondent-appellant.

Lee Edward Goodwin, Flushing, N. Y., for petitioner-appellee.

Before WASHINGTON, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

This case presents an important question arising under Section 315(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426(a).

The district court, in an unreported decision, granted the petition for naturalization of appellee, Otto Hoellger, and the Government has appealed.

The facts are simple and undisputed. Appellee, a native and formerly a citizen of Germany, entered this country for permanent residence on December 3, 1951. Soon thereafter, pursuant to the requirements of 50 U.S.C.A.Appendix § 453, he registered for selective service. During the summer of 1952 he was classified I-A. On September 11, 1952, his Local Board, on its own initiative, reclassified appellee IV-C, a category which indicated that Hoellger was an alien exempt from selective service by virtue of a treaty in force between the alien's nation and the United States. On May 13, 1953 (a date more than four months after December 24, 1952, the effective date of the Immigration and Nationality Act of 1952) the Local Board again acting on its own initiative sent appellee a form application for exemption together with the explanatory statement that if the form were filled out and returned appellee's exempt status would continue in effect.[1] Appellee filled out the form and returned it to the Board. Appellee's IV-C classification continued until February 9, 1955, when his Board reclas-

---

1. We note that it is by no means certain that the Local Board had power to exempt appellee, a permanent resident, from the requirements of military service under 50 U.S.C.A.Appendix, § 454(a). See Schenkel v. Landon, D.C.Mass.1955, 133 F.Supp. 305, and cases there cited.

sified him as I-A because of the abrogation of the treaty arrangement with Germany pertaining to military service. Almost immediately thereafter appellee received an induction notice. He was inducted on April 18, 1955 and, after serving his full term, received an honorable discharge on April 6, 1957. Subsequent to his discharge, on August 8, 1957, appellee filed a petition for naturalization.

 The parties agree that appellee's eligibility for citizenship is to be determined by Section 315(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426(a), which reads as follows:

"Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."

A careful reading of this section would seem to require the conclusion that to be permanently ineligible for citizenship an alien must not only *apply* for exemption, but in addition he must be *relieved* from military service. If there had been any uncertainty as to this interpretation it has been dispelled by Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 606, 77 S.Ct. 545, 549, 1 L.Ed.2d 583, where Justice Brennan, speaking for a unanimous court, defined Section 315(a) as creating a "two-pronged requirement for the determination of permanent ineligibility for citizenship." Applying this authoritative construction to the facts here, solution becomes easy. Even if we assume that appellee applied for exemption, inasmuch as his induction was ordered by the Local Board at a time selected by it and inasmuch as he served a full term, it becomes obvious that appellee has not been relieved from military service. Hence he is eligible for citizenship.

 The Government seems to argue that one who serves is "relieved from service" if his involuntary induction is delayed. It is difficult to reconcile this interpretation with the normal meaning of the words used in Section 315(a). It seems more reasonable to conclude that when Congress used the words "relieved * * * from * * * service" it meant *effectively* relieved. An alien who has actually served in the Armed Forces under compulsion of the executive branch of the Government cannot be said to have been effectively relieved from service. Moreover, the cases the Government cites do not support the proposition that under Section 315(a) eligibility for citizenship is lost despite the fact of military service resulting from involuntary induction.[2]

2. The cases cited are United States v. Kenny, 2 Cir., 1957, 247 F.2d 139; Petition of Cuozzo, 3 Cir., 1956, 235 F.2d 184; Velasquez v. United States, D.C.S.D. N.Y.1956, 139 F.Supp. 790, affirmed 2 Cir., 1957, 241 F.2d 126; Petition of Cerati, D.C.N.D.Cal.1957, 160 F.Supp. 531. Even assuming 315(a) is applicable to all four cases—but see note 8 infra—these cases are readily distinguishable. In neither Kenny nor Cuozzo nor Velasquez did the applicant for citizenship enter the Armed Forces. Cerati was active in seeking relief from military service, and his term of service resulted from voluntary induction at a time when it served his own convenience, not at a time chosen by his Local Board, supra, 160 F.Supp. at page 532. In contrast Hoellger served without protest at a time and under circumstances chosen for him by his Local Board. Furthermore, an exhaustive search of prior cases involving the eligibility of citizenship of aliens who applied for exemption subsequent to the enactment of the Selective Training and Service Act of 1940 has failed to disclose support for the interpretation of Section 315(a) advanced by the Government. See Appendix to this opinion.

The Government, by citing the cases discussed in the preceding paragraph, suggests that in the context of Section 315(a) excuse from military service on grounds of physical disability is equivalent to actual service. This suggestion

Such might well have been the result prior to the effective date of the 1952 Immigration and Nationality Act [3] when the consequences of an alien's application

is erroneous. An alien who postpones induction by means of an application for exemption, and who is thereafter rejected for physical disability, may legitimately be said to have been relieved from military service by virtue of his exemption application. This results from the fact that the physical disability may have arisen between the date the alien would have been inducted but for the obtaining of the exemption and the subsequent date on which induction is ordered. Petition of Velasquez, supra, offers a striking example. Petitioner in that case applied for and received an exemption on grounds of alienage. As soon as he became older than the maximum age at which men were being inducted he sought to have his exemption canceled. Velasquez was "relieved from" military service as a result of his exemption application even though his classification was changed from exempt because of alienage to exempt because of having become 38 years of age.

3. Whether 315(a) has any effect upon aliens who applied for exemption prior to December 24, 1952, the effective date of the 1952 Act, is a question of some difficulty. The Act contains two savings clauses which relate to this question, 405 (a) and 405(b). (These sections appear as notes following 8 U.S.C.A. § 1101.) 405(b) provides that any petition for naturalization filed before December 24, 1952 is unaffected by the 1952 Act save as §§ 301–360, 8 U.S.C.A. §§ 1401–1503 expressly provide to the contrary. Section 315(a) does provide to the contrary. Thus one might conclude that section 315 (a) would be applied retroactively if section 405(b) were the only obstacle thereto. However, the preceding section, section 405(a), is far broader than section 405(b) and reads in pertinent part as follows:

"Sec. 405(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization certificate of citizenship. warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, *or any status, condition, right in process of acquisition, act, thing, liability, obliga-*

*tion, or matter, civil or criminal, done or existing, at the time this Act shall take effect;* but as to all such prosecutions, suits, actions, proceedings, statutes (sic), conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect." (Emphasis added.) Section 405(a) is not referred to in section 315(a). This omission cannot have been inadvertent in view of the careful provisions in 315(a) with reference to 405(b). One must conclude that the matters listed in 405(a) are protected from the changes wrought by 315(a). Even though it be argued that an interpretation that 315(a) can only apply prospectively nullifies the provision permitting retrospective application of matters within 405(b), the argument fails because a contrary interpretation would nullify the clear intent to leave 405(a) unaffected. Any apparent difficulty here stems from the fact that 405(b) is almost wholly redundant in view of the broad coverage of matters contained in 405(a). In United States v. Menasche, 1955, 348 U.S. 528, 536, 75 S.Ct. 513, 99 L.Ed. 615, the Court said: "As we read the statute, subsection (b) merely implements and emphasizes the operation of its forerunner," and later, at page 538, of 348 U.S. at page 518 of 75 S. Ct. the Court also said: "The Government's contention that 405(a) does not apply to any phase in the processing of naturalization petitions would defeat and destroy the plain meaning of that section." The companion case of Shomberg v. United States, 348 U.S. 540, 75 S.Ct. 509, 512, 99 L.Ed. 624, does not indicate a contrary result. In Shomberg the Court merely indicated that the clause in section 318 providing for retrospective application "notwithstanding the provisions of section 405(b)" merely denied effect to any status acquired by having petitioned for naturalization prior to the Act.

Assuming this interpretation of the interrelationship of 405(a) and 315(a) to be correct, ineligibility for citizenship because of prior application for exemption from military service would certainly appear to be a "status" or "liability" "done or existing, at the time this Act shall take effect." Cf. Brownell v. Rasmussen, 1956, 98 U.S.App.D.C. 300, 235 F.2d 527, certiorari dismissed, 355 U.S. 859, 78 S.Ct. 114, 2 L.Ed.2d 66; Barreiro

for exemption from military service were determined by Section 3(a) of the Selective Training and Service Act of 1940, formerly 50 U.S.C.A.Appendix, § 303(a), and Section 4(a) of the Selective Service Act of 1948, 50 U.S.C.A.Appendix, § 454(a).[4] Under these acts the mere application for exemption could be sufficient to disqualify permanently the alien from citizenship.[5] See Ceballos v. Shaughnessy, supra, 352 U.S. at pages 604–605, 77 S.Ct. at pages 548–549. But, as Ceballos v. Shaughnessy, supra, 352 U.S. at page 606, 77 S.Ct. at page 549, makes clear, Section 315(a) produced a fundamental change in the law by substituting the "two-pronged requirement." [6]

In view of the above we hold that appellee was not relieved from service within the meaning of Section 315(a); and we also point out that the principle of "elementary fairness" suggested in Moser v. United States, 1951, 341 U.S. 41, 47, 71 S.Ct. 553, 95 L.Ed. 729 may

well be applicable here. We affirm the judgment of the district court.

Affirmed.

### Appendix

### I.

Cases Where Alien Filed Exemption Application at Time When Section 3(a) of the Selective Service Act of September 16, 1940 Was in Force.

a. *Supreme Court*: McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173; Moser v. U. S.,[7] 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729; Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583.

b. *Court of Appeals for the Second Circuit*: Benzian v. Godwin, 1948, 168 F.2d 952; Mannerfrid v. U. S., 1952, 200 F.2d 730; Petition of Coronado, 1955, 224 F.2d 556; Velasquez v. United States, 1957, 241 F.2d 126; Petition of Skender, 1957, 248 F.2d 92, certiorari denied 355 U.S. 931, 78 S.Ct. 411, 2 L.Ed.

---

v. McGrath, 9 Cir., 1954, 215 F.2d 585, certiorari denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697. Accepting this argument one might conclude that the consequences of an application for exemption made prior to December 24, 1952 are unaffected by 315(a). Petition of Mirzoeff, 2 Cir., 1958, 253 F.2d 671, 672, is *contra,* and that case draws some support from the language in 315(a) which refers to "* * * any alien who applies or *has applied* for exemption * * *." (Emphasis supplied.)

The appendix to this opinion is organized on the assumption that Section 315(a) is not applicable to aliens who filed applications for exemption prior to December 24, 1952, the effective date of the Immigration and Nationality Act of 1952. But even if this assumption is incorrect, and 315(a) is applicable to all petitions for naturalization adjudicated after December 24, 1952, irrespective of the date when petitioner applied for exemption, there is almost nothing in the cases to suggest a result contrary to the result reached in the present case. See note 8, infra.

**4.** Section 3(a) of the 1940 Act provides in part:

"Except as otherwise provided in this Act, every male citizen of the United

States, and every other male person residing in the United States * * * shall be liable for training and service in the land or naval forces of the United States: Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, *but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States * * *.*" (Emphasis supplied.)

The wording of the analogous portion of Section 4(a) of the 1948 Act is virtually identical.

**5.** But see note 7, infra

**6.** Section 403(b) of the 1952 Act repeals all parts of prior laws inconsistent with provisions of the 1952 Act. As indicated in this opinion, 315(a) is inconsistent with § 3(a) of the 1940 Act and § 4(a) of the 1948 Act, and to that extent these earlier acts are repealed.

**7.** See Note 7 on Page 766.

2d 413; Petition of Mirzoeff, 1958, 253 F.2d 671;[7][8] Husney v. United States, 1958, 254 F.2d 958.[8]

c. *Courts of Appeals for Other Circuits*: Machado v. McGrath, 1951, 89 U.S.App.D.C. 70, 193 F.2d 706, certiorari denied 342 U.S. 948, 72 S.Ct. 557, 96 L. Ed. 705;[7] Barreiro v. McGrath, 9 Cir., 1954, 215 F.2d 585, certiorari denied 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697; United States v. Bussoz, 9 Cir., 1955, 218 F.2d 683; Ballester Pons v. United States, 1 Cir., 1955, 220 F.2d 399, certiorari denied sub nom. Pons v. United States, 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741;[8] United States v. Bazan, 1955, 97 U.S.App.D.C. 108, 228 F.2d 455;[7][8] Brownell v. Rasmussen, 1956, 98 U.S.App.D.C. 300, 235 F.2d 527, certiorari dismissed 355 U.S. 859, 78 S.Ct. 114, 2 L.Ed.2d 66; Giz v. Brownell, 1956, 99 U.S.App.D.C. 339, 240 F.2d 25; Savoretti v. Small, 5 Cir., 1957, 244 F.2d 292; Jubran v. United States, 5 Cir., 1958, 255 F.2d 81;[8] Memishoglu v. Sahli, 6 Cir., 1958, 258 F.2d 350.

d. *District Courts Within Second Circuit*: Petition of Dweck, E.D.N.Y.1950, 106 F.Supp. 169; Petition of Molo, S.D. N.Y.1952, 107 F.Supp. 137; Petition of Miranda, E.D.N.Y.1953, 111 F.Supp. 481;[8] Petition of Berini, E.D.N.Y. 1953, 112 F.Supp. 837;[7] Petition of Caputo, E.D.N.Y.1954, 118 F.Supp. 870;[7] Petition of Zumsteg, S.D.N.Y.1954, 122 F.Supp. 670;[7][8] Petition of Fleischmann, S.D.N.Y.1956, 141 F.Supp. 292;[8] Petition of Gourary, S.D.N.Y.1957, 148 F. Supp. 140;[7][8] Petition of Pinto, S.D. N.Y.1957, 152 F.Supp. 892;[8] Petition of Bruce, S.D.N.Y.1958, 163 F.Supp. 493.[8]

e. *District Courts in Other Circuits*: Petition of Ajlouny, E.D.Mich.1948, 77 F. Supp. 327; Petition of Kutay, S.D.Calif. 1954, 121 F.Supp. 537; [7][8] Petition of Mauderli, N.D.Fla.1954, 122 F.Supp. 241;[8] Petition of Ahrens, D.N.J.1956, 138 F.Supp. 70;[7][8] Kiviranta v. Brownell, D.D.C.1956, 141 F.Supp. 435;[7] Petition of Planas, D.N.J.1957, 152 F. Supp. 456;[7][8] Petition of Calvo, D.N.J. 1958, 161 F.Supp. 761;[8] Petition of De-Campos, D.N.J.1958, 163 F.Supp. 173;[8] Petition of Bergman, D.Minn.1959, 173 F.Supp. 880.[8]

## II.

Cases Where Alien Filed Exemption Application at Time When Section 4(a) of the Selective Service Act of June 24, 1948 Was in Force.

a. *Court of Appeals for the Second Circuit*: Paris v. Shaughnessy, 1957, 247 F.2d 1, certiorari denied 355 U.S. 926, 78 S.Ct. 384, 2 L.Ed.2d 357.

b. *Courts of Appeals for Other Circuits*: Petition of Cuozzo, 3 Cir., 1956, 235 F.2d 184;[8] Barber v. Rietmann, 9 Cir., 1957, 248 F.2d 118, certiorari denied, 355 U.S. 923, 78 S.Ct. 365, 2 L. Ed.2d 353; Brunner v. Del Guercio, 9 Cir., 1958, 259 F.2d 583;[7] Gilligan v. Barton, 8 Cir., 1959, 265 F.2d 904.[8]

c. *District Courts Within Second Circuit*: Petition of Elken, E.D.N.Y.1958, 161 F.Supp. 823.

d. *District Courts in Other Circuits*: Schenkel v. Landon, D.Mass.1955, 133 F. Supp. 305;[8] Petition of Carvajal, N.D. Calif.1957, 154 F.Supp. 525;[8] Petition of Felleson, N.D.Ill.1958, 169 F.Supp. 471, 472.[7][8]

e. *State Courts*: Petition of Schulz, 1956, 384 Pa. 558, 121 A.2d 164;[7][8] Petition of Kauffmann, 1959, 394 Pa. 625, 148 A.2d 925.[7][8]

## III.

Cases Where Alien Filed Exemption Application at Time When Section 315 (a) of the Immigration and Nationality Act of June 27, 1952 Was in Force.

a. *Cases Granting Citizenship Where Alien Entered Armed Forces*: Petition of Hoellger (present case below; decision unreported).

b. *Cases Granting Citizenship Where Alien Did Not Enter Armed Forces*: Petition of Sally, D.C.S.D.N.Y.1957, 151 F.Supp. 888.

c. *Cases Denying Citizenship Where Alien Did Not Enter Armed Forces*: United States v. Kenny, 2 Cir., 1957, 247 F.2d 139; United States ex rel. Rosio v. Shaughnessy, D.C.S.D.N.Y.1955, 134 F.Supp. 217; Petition of Burky, D.C. E.D.N.Y.1958, 161 F.Supp. 736; Petition of Bergin, D.C.D.N.J.1959, 173 F. Supp. 883.

d. *Cases Denying Citizenship Where Alien Entered Armed Forces*: Petition of Cerati, D.C.N.D.Cal.1957, 160 F.Supp. 531.[9]

MOORE, Circuit Judge (concurring in the result).

I concur in the result but for somewhat different reasons. Appellee fully understood the consequences of his election in claiming draft exemption.[1] He traded ineligibility to become a citizen against relief from service—not a mere temporary stay or deferment subject to cancellation. However, the government's part of the bargain was that he be relieved from service. When the government by its own act destroyed Hoellger's exempt status by changing its arrangements with Germany, thereby making its nationals subject to service in our armed forces and thereafter compelled him to serve, it took away the consideration for the original bargain. Because the government deprived Hoellger of that which it represented to him would be granted, it is in no position to insist on enforcement of citizenship ineligibility, the price he was paying for that which he did not receive.

7. The cases footnoted 7 hold that the alien was not debarred from citizenship although he had filed an application for exemption. Insofar as these cases do not rely upon Section 315(a) (see note 3, supra and note 8, infra) they rest upon the doctrine of Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, wherein the Supreme Court held that, in order to satisfy principles of elementary fairness, a waiver of eligibility for citizenship must have been knowing and intentional.

8. In the above cases the courts purported to base the decision upon a construction of Section 315(a) even though the applications for exemption were filed before the effective date of the 1952 Act. While not indicating disapproval of the result reached in any of these cases, it can be argued that the ground of decision was incorrect for the reasons set out in note 3, supra. Even so, it is to be observed that in the cases listed under I and II, only one, perhaps two, of them can be said to support the position that 315(a) disqualifies an alien who had applied for exemption but nevertheless was inducted thereafter. In Petition of Elken, supra, where naturalization was denied to a petitioner in service, the court based its decision almost entirely upon Petition of Kenny, 247 F.2d 139 (2 Cir.1957). Reliance upon Kenny was misplaced, however. Kenny rested upon the fact that there petitioner did not serve in the Armed Forces. In Petition of Carvajal, supra, it is not clear from the opinion whether petitioner had been inducted into the Armed Forces.

9. See discussion of Cerati in note 2, supra.

1. Upon the hearing before the Examiner, appellee testified that he had originally been classified I-A and subsequently classified as a German treaty national. His answers to certain questions affirmatively establish that he knowingly and voluntarily chose exemption.

"Q. Did you read this document when you signed it? A. Yes, and somebody explained it to me."

"Q. Who explained it to you? A. This witness, Mr. Harry Hinrichsen" [his brother-in-law and employer].

"Q. When you signed this document, did you intend to reside in the United States at that time? A. No."

"Q. Had you intended to return to Germany? A. Yes, I had my folks still there."

"Q. You understood this document perfectly? A. Yes."

"Q. You knew that if you signed this, you couldn't become a citizen? A. Yes."