Petition for **NATURALIZATION OF Curt Alexander KRUMMENACHER.**

No. 143151.

United States District Court
N. D. California, S. D.
March 6, 1962.

Joseph Hertogs, San Francisco, Cal., for the petitioner.

Daniel H. Lyons, United States Immigration and Naturalization Service, San Francisco, Cal., for the United States.

SWEIGERT, District Judge.

Petitioner, Curt Alexander Krummenacher, a Swiss national, filed his petition for naturalization on June 20, 1960, pursuant to Section 316 of the Immigration and Nationality Act, 8 U.S.C.A. § 1427.

This petition has been contested by the Immigration and Naturalization Service, whose designated examiner has recommended that the petition be denied for the reason that the petitioner is permanently ineligible from naturalization under the provisions of Section 315 of the Act, 8 U.S.C.A. § 1426.

That Section provides in pertinent part as follows:

"(a) * * * any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces * * * on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System * * * shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

The Government, respondent here, contends that petitioner is an alien who applied for and received an exemption from military service on the ground of alienage; that he was, therefore, "relieved" within the meaning of the statute, and is, therefore, permanently barred from citizenship. Petitioner admits that he received such an exemption, but contends that he was not "relieved", within the meaning of the statute, because he was thereafter inducted into the military service upon his request for voluntary induction, and actually served therein.

Respondent raises the question whether the Local Board had power to grant petitioner an exemption from military service, and, if it did not have such power, what effect its ultra vires act would have upon petitioner's right to naturalization.

Under our view of the main issue in the case, it is not necessary to decide this subsidiary question. We merely note that Courts have differed in their consideration of this problem. See, Schenkel v. Landon, 133 F.Supp. 305 (D. Mass.1955). Cf. United States v. Gredzens, 125 F.Supp. 867 (D.Minn.1954); United States ex rel. Rosio v. Shaughnessy, 134 F.Supp. 217 (S.D.N.Y.1954).

The record shows that petitioner registered for the Selective Service, pursuant to the requirements of the Universal Military Training and Service Act, 50 U. S.C.A.Appendix, § 451 et seq., on November 5, 1953; that he was thereafter classified as I–A, and, after physical examination, was found acceptable for induction.

A day after he was ordered for induction, August 10, 1954, petitioner executed Form C–294, entitled "Application by Alien for Exemption from Military Service in the Armed Forces of the United States," on the face of which the provisions of Section 315 are set forth in full.

The application was made upon the ground that petitioner was an alien, a national of Switzerland, and, as such, entitled to exemption under the terms of a treaty between Switzerland and the United States. Upon receipt of the application, his Local Board notified petitioner that its previous order to report for induction was cancelled.

Petitioner testified before a designated examiner that he both read and understood the exemption form at the time of his application, and that he executed it because he was sure that he would soon return to Switzerland; that he changed his mind later and, upon the advice of friends and after consultation with his Local Board and the Immigration Service, he applied for voluntary induction on December 29, 1955, some sixteen

months after the date of his application for exemption.

He further testified that he hoped thereby to "make it up" (p. 6, Ex. 1), even though he was aware that he had signed a paper fully advising him he had lost his rights to citizenship. (p. 7, Ex. 1).

Petitioner's application for voluntary induction resulted in an order for induction and, March 12, 1956, he was actually inducted into the United States Navy, served a full term and was honorably discharged on October 11, 1957.

The question is whether petitioner's application for voluntary induction and his subsequent induction and service have the legal effect of reviving a right to naturalization otherwise lost by his earlier application for exemption under the provisions of Section 315.

In the recent case of Cannon v. United States, 288 F.2d 269 (2d Cir.1961), petitioner was a native and citizen of Ireland, who applied for and received exemption from Selective Service, pursuant to a treaty then in effect between Ireland and the United States. Exemption was initially accorded him on the basis of a request made by him, through the Irish Ambassador and approved by the State Department. Thereafter, he applied for a continuation of the exemption at which time he was apprised of the privisions of Section 315. More than a year later, Cannon formally requested that his application for exemption be withdrawn, and he was reclassified from IV–C, denoting an exempted alien, to I–A. After a further period, he was inducted into the Armed Forces of the United States, where he honorably served the full term.

On these facts, the Court, applying an interpretation of Section 315 earlier adopted in the case of United States v. Hoellger, 273 F.2d 760 (2d Cir.1960), i. e., that the statutory word "relieved" means "effectively relieved," held that he had not been "relieved" from service within the meaning of Section 315 and was, therefore, not barred from citizenship.

The Court stated:

" * * * By withdrawing his application for exemption the alien Cannon made himself subject to the draft if the Government chose to compel him to serve. It was the Government that called Cannon into the armed services. His was not a voluntary enlistment—he was a draftee, summoned into service when it purposed the Government to do so * * *. The withdrawal of the application for exemption did not reinstate Cannon's right to apply for citizenship. Not until his service in the armed forces was this right reinstated. Not inducting Cannon would have effectively relieved him from military service, and he would have been forever barred from citizenship. By compelling him to serve at a time chosen by the Local Board he was no longer relieved from service and thereby by this compulsion the Local Board returned to him his opportunity of applying for naturalization." (288 F.2d at 271).

We have quoted at length from the Cannon case, because we believe that the situation presented to the Court in Cannon is substantially the same as that presented here. Both petitioners affirmatively and voluntarily acted in such a manner as to remove their claim of exemption and render themselves liable for induction. Here, of course, petitioner volunteered for induction by executing an appropriate form, while in Cannon petitioner requested that his application for exemption be withdrawn. We do not consider this difference of detail significant. Petitioner was doing in effect what Cannon had done, to wit: "[making] himself subject to the draft if the Government chose to compel him to serve." (supra.) In our opinion, the significant fact in both cases is that the Local Board chose to accept the voluntary action of these petitioners.

We are, of course, aware that In re Cerati, 160 F.Supp. 531 (N.D.Cal.1957) is directly contrary to the result reached in the Cannon case. In Cerati the Court applied the bar of Section 315 to a petitioner, identically situated to the present petitioner, who, after having received an exemption, requested voluntary induction, and was thereafter actually inducted. The Court, finding no indication that Congress intended that an exempted alien may regain his eligibility for citizenship by service in the armed forces "at such time as he sees fit" (at 532), stated that such a petitioner falls squarely within the statute.

The Cerati case was noted and distinguished by the Court in United States v. Hoellger, supra. There, it was held that petitioner, a native and citizen of Germany, who had received an exemption pursuant to a treaty, but was later reclassified and inducted into the military service upon the abrogation of the treaty, had not been "relieved" from military service. The Court stated that "An alien who has actually served in the Armed Forces under compulsion of the executive branch of the Government cannot be said to have been effectively relieved from service." (273 F.2d at 762). In distinguishing Cerati, the Court classified it as a case which did not pertain to the eligibility for citizenship of such an alien, as Hoellger, whose military service resulted from involuntary induction. (at 762, especially footnote 2.)

In Cannon, however, the same Court specifically referred to the factual difference between Cannon and Hoellger, but stated that the two cases were "remarkably similar." (at 271). No reference was made to Cerati.

In the recent case of United States v. Lacher, 299 F.2d 919 (9th Cir., Feb. 13, 1962), involving an involuntary induction indistinguishable in its facts from Hoellger, supra, the Ninth Circuit, in a short per curiam, upheld the decision of the District Court that the petition for naturalization should be granted. The Court relied equally and without distinction upon Cannon as well as

Hoellger, and also upon In re Rego's Petition, 289 F.2d 174 (3rd Cir. 1961).

We have concluded from our analysis of these cases, and especially since the filing of the Lacher opinion, that the strict rule of the Cerati case has been supplanted by the more liberal rule of Cannon. However, in view of the fact that Cerati has not been expressly disapproved or rejected, either in Cannon or Lacher, we feel obliged to express our reasons for refusing to follow it in the present case.

■ Section 315 allows an alien, subject to the requirements of our Selective Service laws, to avoid his obligation for military service if he is willing to bargain away his eligibility for American citizenship in exchange for the exemption.

■ The Court in Cerati noted, and correctly so, that an exempted alien who uses the exemption to remain out of the military service so long as that suits his convenience and then waives exemption at such later time as he chooses, should not be deemed to have regained his entitlement to naturalization. However, the ultimate responsibility for adhering to such a view lies within the power of the Government which can, if it chooses, hold the alien to his bargain.

■ Merely withdrawing his application for exemption, or filing a request for voluntary induction, would not itself operate to relieve the alien from his bargain. That would be merely a unilateral rescission offer which the Government could refuse to recognize as affecting his exemption status.

Where, however, the Government chooses to accept such an offer, and thereafter exercises its compulsory power of induction, it withdraws the underlying consideration of exemption from military service. In such a case, although the Government could have insisted on keeping the bargain and relieving the alien from the performance of military service, it has made its choice not to do so and cannot subsequently take the position that the alien was so effectively re-

lieved from military service as to bar his naturalization under Section 315.

For these reasons, we believe that the petition should be granted. Petitioner, as prevailing party herein, will prepare findings of fact and conclusions of law in accordance with this opinion and in pursuance of Rule 21 of this Court, West's Ann.Code.