In re Petition for Naturalization of Ymer Xhafer LEPI, No. 50107.

Civ. No. 11375.

United States District Court
D. Connecticut.

April 7, 1966.

Francis McDonald, Waterbury, Conn., for petitioner.

William M. Dalton, Naturalization Examiner, Immigration & Naturalization Service, New Haven, Conn., for respondent.

ZAMPANO, District Judge.

This is a contested naturalization proceeding. The petition, filed on January 13, 1964, is opposed by the Naturalization Examiner on two grounds. It is claimed the petitioner, Ymer Xhafer Lepi, became permanently ineligible for citizenship in 1943 when he was relieved from military service as a resident alien pursuant to Section 315 of the Immigration and Nationality Act, as amended. 8 U.S.C. § 1426.[1] In addition, the doctrine of res judicata is said to bar the petitioner from relitigating his application

1. 8 U.S.C. § 1426(a) provides:
"Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."
A compilation of cases under Section 315 and under Section 3(a) of the Selective Service Act of 1940, as amended, is contained in Appendix, United States v. Hoellger, 273 F.2d 760, at 764 (2 Cir. 1960).

which previously had been denied in the state court.

██ In 1943 Mr. Lepi applied for and received a IV–C classification relieving him from military service as a resident alien. An exemption under the Act, if requested knowingly and intentionally, forever precludes citizenship. 8 U.S.C. § 1426; Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951). The petitioner, however, asserts he was compelled by his father to sign the application without either knowledge or understanding of the facts and consequences of his act. The examiner, on the other hand, claims the petitioner knowingly and intelligently relinquished eligibility for naturalization to escape his military obligation.

Mr. Lepi is a native of Albania who was lawfully admitted to the United States as a permanent resident on November 17, 1939. At the time he was nineteen years old and spoke only Albanian. In Waterbury, Connecticut, he was put to work as a dishwasher in his father's restaurant which was patronized almost exclusively by Albanian immigrants. For the next nine years the petitioner was subjected to a pattern of paternal dominance which influenced and controlled his every activity. Required to work fourteen hours a day, seven days a week, he was paid at his father's whim at the rate of five to twenty dollars a week. The petitioner was permitted to socialize only with Albanian nationals. Not only did Mr. Lepi, Sr., arrange his son's marriage without consulting the youth, but he also insisted the newlyweds live with him in his one-room apartment. No English could be spoken in his father's presence. It is not surprising, then, that despite some attendance at night school, the petitioner neither spoke nor understood English prior to 1948. In that year the petitioner, his wife, and their three children were permitted to leave the father's apartment. Once extricated from his father's control, he sought new employment, a new residence and, for all practical purposes, a new life.

The testimony of Pasquale DeCicco, an agent of the Selective Service Board, corroborated the petitioner's testimony and vividly portrayed the father as a strict, domineering overseer of young Lepi's early life here. Mr. DeCicco, an attorney, was the registrant advisor assigned by the Selective Service Board to counsel the petitioner at the time the exemption form was executed in 1943. He acknowledged he could not speak Albanian and that the petitioner could not understand English. No interpreter was provided by the Board. In an attempt to overcome the communication barrier, Mr. DeCicco informed the petitioner's father, who understood some English, of the legal effect of his son's application. The attorney admitted, however, he did not know if the information had been conveyed to the applicant. Petitioner denied it had. He testified his father merely handed him the form and ordered "Sign here." Without hesitation or inquiry, he complied.

Under these circumstances and after a consideration of all the testimony and exhibits before this Court, it is clear the petitioner did not comprehend the nature and consequences of his act or the irrevocability of the waiver. It is concluded the petitioner did not intentionally or intelligently waive his right to citizenship. Moser v. United States, supra; Petition of Kutay, 121 F.Supp. 537 (D.C.Cal. 1954); Petition for Naturalization of Koplin, 204 F.Supp. 33 (D.C. Colo. 1962). Compare, In re Dulo's Petition for Naturalization, 237 F.Supp. 46 (D.Conn. 1965).

██ The question remains whether petitioner's citizenship is barred by the doctrine of res judicata.

In 1951, petitioner again attended night school and subsequently applied for citizenship which was denied by Judge Comley of the Connecticut Superior Court. In that brief proceeding the examiner presented the Lepi petition and recommended it be denied because of the petitioner's relief from military service under Section 315, supra. Counsel for the petitioner then advised the court that

he did not feel the matter should be prosecuted until Mr. Lepi could "make amends in his own way by applying to some armed forces." A moment later he continued, "I do not wish to prosecute this matter at this time. We will offer no evidence." Whereupon, Judge Comley, stating that he had "no alternative", denied the petition.

It is apparent judgment was entered pro forma following a voluntary withdrawal of the application. No evidence was presented; no rights were litigated. The crucial issue before this Court was not determined. In short, there was no adversary proceeding. Under these circumstances, the doctrine of res judicata cannot foreclose the petitioner from his day in this Court. Williams v. Murdoch, 330 F.2d 745, 752–753 (3 Cir. 1964); cf. Hertz v. Graham, 168 F.Supp. 755, 756 (S.D.N.Y.1958).

Accordingly, the petitioner is found to be eligible for citizenship. There being no other grounds of opposition and there being no reason to believe petitioner would not make a good citizen, his petition for naturalization is granted.