**Herbert BROWNELL, Jr., Attorney General of the United States,**
**Appellant,**

**v.**

**Einar RASMUSSEN, Appellee.**

**No. 11928.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 5, 1956.

Decided June 14, 1956.

Mr. Harold H. Greene, Asst. U. S. Atty., for appellant. Messrs. Leo A. Rover, U. S. Atty., at the time of argument, and Lewis Carroll, Asst. U. S. Atty., were on the brief for appellant. Mr. William J. Peck, Asst. U. S. Atty., at the time record was filed, also entered an appearance for appellant.

Mr. David Carliner, Washington, D. C., for appellee. Messrs. Jack Wasserman and Irving Tranen, Washington, D. C., were on the brief for appellee.

Before EDGERTON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Plaintiff-appellee obtained a declaratory judgment in the District Court that he "is not ineligible for citizenship upon the ground that he claimed exemption [from liability for service under the Selective Training and Service Act of 1940 *] as a neutral alien," and accordingly is not subject to deportation upon the ground that he entered the United States illegally. When we previously heard this case, we were of the opinion that under Heikkila v. Barber, 1953, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972, the District Court was without jurisdiction to review a deportation order other than in a habeas corpus proceeding. Brownell v. Rasmussen, 1955, 95 U.S. App.D.C. 260, 221 F.2d 541. In Rasmussen v. Brownell, 1955, 350 U.S. 806, 76 S.Ct. 44, the Supreme Court reversed

* Now 50 U.S.C.A.Appendix, § 451 et seq.

without opinion, and remanded the case to us for consideration on the merits, to which we now proceed.

■ Appellee, an alien residing in this country, in 1943 filed an application for relief from liability for the draft in accordance with Section 3(a) of the Selective Training and Service Act of 1940, 54 Stat. 885 (1940) as amended, 55 Stat. 845 (1941), on the ground that he was a citizen of a neutral nation, Denmark. He was given deferred status. A few months later he offered himself for induction, but was rejected as physically unfit. The question before us is whether by his request for relief appellee became debarred from becoming a citizen of the United States, since if he did become debarred he is subject to deportation.[1] Appellee says that he is not debarred, for the reasons that (1) he was not entitled to relief from the draft because (so he contends) Denmark was not neutral at the time of his application, and (2) he was not in fact relieved from liability because of his application. We think appellee's contentions cannot be sustained.

Section 3(a) says in pertinent part that "every * * * male person residing in the United States * * * shall be liable for training and service * * *. Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if * * * he has made application to be relieved from such liability * * * but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States".

■ Since appellee was admittedly a male alien "residing" in this country, he was "liable for service" whether he was a citizen of an allied nation, a neutral nation, or an enemy nation, and remained liable whether or not he was called, or deferred for some reason unrelated to alienage.[2] He asked to be relieved from liability on the ground that he was a citizen or subject of a neutral country. This seems all that Section 3(a) requires: the "bar only comes into existence when an alien resident liable for service *asks* to be relieved." McGrath v. Kristensen, supra, note 2, 340 U.S. at page 172, 71

1. Appellee claims that since he was authorized to make voluntary departure in 1944, prior to the Act of October 29, 1945, 59 Stat. 551, that Act should not apply to his re-entry in 1946. But Section 13(c) of the Immigration Act of 1924, 43 Stat. 153, which the Act of October 29, 1945 amended [now 8 U.S. C.A. § 1182], specifically makes admission to the United States the thing barred to those ineligible to citizenship, not voluntary departure, so that the 1945 Act clearly is applicable to the 1946 re-entry. Cases under the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq. are inapposite, because the 1945 Act contains no counterpart to the Section 405 "savings clause" of the 1952 Act.

2. In McGrath v. Kristensen, 1950, 340 U.S. 162, at page 172, 71 S.Ct. 224, at page 230, 95 L.Ed. 173, the Supreme Court said:

"If Kristensen was not 'residing' at the time of his application for relief, he could not then have had 'such liability' for service. If there was no 'liability' for service, the disqualification for citizenship under the penalty clause could not

arise because the applicant had not made the 'application' referred to in the statute as 'such application.' 'Such application' refers to an application to be relieved from 'such liability.' As there was no 'liability' for service, his act in applying for relief from a nonexistent duty could not create the bar against naturalization. By the terms of the statute, that bar only comes into existence when an alien resident liable for service asks to be relieved."

Unlike Kristensen, who was not liable for service under Section 3(a) because he was not a resident, appellee was liable. Under the Act, one may be liable though not called, or deferred or exempted. See, e. g., Section 4(a), 54 Stat. 887:

"Sec. 4. (a) The selection of men for training and service under section 3 (other than those who are voluntarily inducted pursuant to this Act) shall be made in an impartial manner, under such rules and regulations as the President may prescribe, from the men who are liable for such training and service and who at the time of selection are registered and classified but not deferred or exempted * * *."

S.Ct. at page 230, 95 L.Ed. 173 (emphasis added). And as this court said in Machado v. McGrath, 1951, 90 U.S.App. D.C. 70, 74, 193 F.2d 706, 710, certiorari denied, 1952, 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705:

> "Citizens and subjects of a neutral country who apply for relief prior to induction need not serve in our armed services. But any person who asks for this relief is thereafter debarred from becoming a citizen of the United States. Congress nowhere provided that the subsequent entrance of a neutral into the war, either with or without reclassification of its aliens, would remove the bar to citizenship previously incurred."

There is thus basis for concluding that a resident alien who applies for relief on the ground of neutral nationality is barred by the application, regardless of whether the country in question is in fact neutral. But we need not reach that point. We are convinced that in the instant case the ruling of the Director of Selective Service holding Denmark to be a neutral country for purposes of Section 3(a) is controlling, and cannot be collaterally attacked. The status of a foreign country for our domestic purposes is a political matter peculiarly within the control of the executive branch of the government. While it is true that determinations on foreign policy matters are normally delegated to the Secretary of State rather than other members of the executive branch, this is not necessarily so. Here the Director acted under the supervision of the President, who was of course charged with military as well as foreign policy responsibilities. In the absence of some repudiation by the President of the Director's determination regarding the status of Denmark and its nationals, we do not think the courts should entertain a collateral attack upon it. Compare Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 1948, 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568.

■ We turn to appellee's contention that it is not his request for relief, but whether in fact he was relieved because of neutral alienage, that is determinative. If appellee had not been relieved at all, but had in fact been impressed into service, there might be some weight to his argument. But here it is clear that appellant was in fact deferred shortly after making his application for relief. His complaint in the District Court contains no allegation that the deferment was based on anything other than his application.[3] The case was not tried on any such basis, and it is only in this court that the suggestion is made that the deferment might have been based on something other than his application as a neutral. It is in fact no more than a suggestion—there is no definite offer to show that the deferment was actually based on another ground. Under the circumstances, we do not think we would be justified in remanding the case for a determination by the trial court of the ground of deferment.[4]

---

3. The complaint says that the plaintiff made the application for relief as a neutral, and adds "Plaintiff was thereafter classified IV–A." The Government's answer admits this allegation. Under the Selective Service regulations then in force, the "IV–A" classification was for persons too old to be called for service (over 45). See 7 Fed.Reg. 9607 (Nov. 20, 1942). The proper classification for aliens claiming relief as neutrals was "IV–C." But the complaint goes on to say that after plaintiff requested induction his "claim for exemption was no longer honored." This rather strongly implies that prior thereto the "claim"—evidently the application for relief—had been honored.

4. The writer of this opinion would go further, and say that appellee is barred even though it is shown that his draft board purported to defer him for some reason other than his proffered application for relief as a neutral alien. Appellee should not now be allowed to disavow the legal consequences of his application. Congress intended that applications for relief duly filed by nationals of neutral countries should be honored: if any such application had not been hon-

Appellee also contends that his application was the result of mistake. He said he believed, partly at least because of misinformation supplied by his draft board, that induction into the armed forces would not facilitate or authorize naturalization, and therefore he chose to seek relief from liability. But this is not the sort of mistake as to the nature of the application for relief from liability or its immediate consequences such as existed in Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, or Machado v. McGrath, supra. Instead, as in Mannerfrid v. United States, 2 Cir.1952, 200 F.2d 730, 733, certiorari denied, 1953, 345 U.S. 918, 73 S.Ct. 729, 97 L.Ed. 1351, this is a case in which the alien, "although he knows that the claim [for relief from liability for service] will forfeit his right * * * is induced to make it because he is mistaken as to what will be the consequences of not making it. We concede that that would be no more than a further step of the lenity that the Court exercised in Moser v. United States, supra, and that the difference is one of degree; but that is so often the determining factor in situations of this kind, that we need not support its propriety if the difference in degree be wide enough. We can say no more than that we do not believe that Congress would have tolerated the necessary laxity in this instance." We agree with the Second Circuit's conclusion concerning this issue. And our decision in Machado v. McGrath, supra, also makes it clear that appellee's action in offering himself for induction while the war was still going on does not overcome the effect of his earlier application for relief.

Accordingly, the judgment of the District Court must be reversed with instructions to enter judgment for appellant.

So ordered.

ored, judicial intervention would no doubt have been available. A man deferred for neutral alienage, furthermore, had a

much more secure status than one deferred for age, physical reasons, parenthood, or the like.