**Petition of Paul GOURARY for Admission as a Citizen of the United States of America.**

United States District Court
S. D. New York.
Jan. 28, 1957.

Andrew Reiner, New York City, for petitioner; Jack Wasserman, Washington, D. C., of counsel.

Morris Rifkin, Immigration and Naturalization Service, New York City, for Immigration and Naturalization Service.

WEINFELD, District Judge.

Petitioner, a native and national of Austria, now 37 years of age, was admitted to this country for permanent residence in 1939.

In 1954 he filed the present petition for naturalization under the general provisions of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq. The examiner recommended denial of the petition on the ground that in 1942 the petitioner applied for and was granted exemption from military service because of alienage and in consequence was debarred from citizenship by virtue of § 315 of that Act, 8 U.S.C.A. § 1426, which provides:

"(a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

The facts which give rise to the present controversy are somewhat unusual. The issue as to whether the petitioner is to be denied citizenship arises because the local draft board with which he registered erroneously assumed that Austria was a neutral country when in fact it was an enemy country.

Petitioner on June 18, 1941 executed the required Selective Service questionnaire, in which he stated he was an alien, a citizen or subject of Austria. He was classified IV–C which was a deferred classification for both enemy and neutral aliens. Thereafter he was re-classified I–A. Upon receipt of his I–A re-classification he appeared before the local board on April 21, 1942 and according to his testimony applied for temporary deferment from military service due to his father's serious illness. He testified that he was handed by a clerk Form 301 entitled "Application by Alien for Relief from Military Service"; that he was advised if he filled out the form it would take care of his situation. Form 301 contains the following:

"I do hereby make application to be relieved from liability for training and

service in the land or naval service of the United States, * * * I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States * * *."

Petitioner duly executed the form and thereafter he was re-classified IV–C and was relieved from military service. Petitioner, who is well educated, understood the contents of the request for exemption. He testified that he would not have signed the exemption application if his father had not been ill.

At the time petitioner executed Form 301 only a neutral alien had the right to apply for and to obtain relief from military training service.[1] But if he did, as already noted, he was thereafter ineligible for citizenship. However, an enemy alien had no right to relief from military duty. No law, regulation or rule authorized a local board to exempt an enemy alien. He remained subject to induction but whether or not he was accepted rested with the military authorities.[2] However, a procedure was set up under the Selective Service Act whereby an enemy alien who desired to be relieved of military service could file notice of objection to induction into the armed forces. The form of objection used in the instance of an enemy alien was known as Form 304.[3] In the instance of a neutral alien who desired to exercise his statutory right of exemption from military service, the Selective Service Board required him to sign Form 301 which contained the provision quoted above, and which was signed by petitioner.

It is now conceded that since petitioner was an enemy alien, he should have been given, when he applied for what he describes as temporary deferment, Form 304, which amongst other matters contains the following: "Section IX. Statement of Alien. 41. I $\frac{\text{do}}{\text{do not}}$ object to service in the land and naval forces of the United States."

The Government also concedes that if he had signed the above form and objected to service and if in consequence the military authorities had decided not to induct him,[4] this would not have debarred him from citizenship under the 1952 Act. The Government's position is that even though he was not furnished Form 304 and instead was erroneously furnished Form 301 applicable only to neutral aliens, under which he claimed (although he had no right to) exemption from such service, he may not be granted citizenship under § 315 (a) of the Immigration and Nationality Act of 1952.

The Act of 1952 makes no distinction between neutral and enemy aliens. Thus the Government contends that the Act with its generic use of the noun alien, applies to petitioner and is retroactive notwithstanding that § 3(a) of the Selective Service Act of 1940, in effect when petitioner filed application Form 301, did not permit exemption to him as an "enemy" alien and was available only to "neutral" aliens.

■ Congress in its undoubted power to prescribe conditions of eligibility for aliens seeking citizenship may make the law retroactive so that it debars those who committed the proscribed acts prior to the date of the law. However, it does not necessarily follow that the present Act was intended to apply to those enemy aliens who, like the petitioner, were never permitted to apply for, and had no right to, exemption from military service. The question then arises, why the use of the noun "alien", instead of "neu-

---

1. Section 3(a) of the Selective Training and Service Act of 1940, 54 Stat. 885.

2. Id.

3. This form was used by the armed forces from a security viewpoint to determine whether an enemy alien would be ac-

ceptable for service in view of his background.

4. The testimony upon the hearing was that almost invariably the military authorities recognized the objection from a security viewpoint.

tral alien". The answer, it seems to me, is furnished by the differences between the Selective Service Act of 1940 and the Universal Military Training and Service Act of 1948, insofar as it relates to aliens. Whereas under the 1940 Selective Service Act enemy aliens had no right to be relieved from military service, Congress in 1948 granted this right to them when it passed the Universal Military Training and Service Act.[5] Under that Act any alien could apply for such exemption. Thus for a period of four years, up to the passage of the Immigration and Nationality Act of 1952, both enemy and neutral aliens had the right to exemption from military training and service, but its exercise debarred them from future citizenship; and this situation readily explains the use of "alien" instead of "neutral alien" in § 315(a) of the 1952 Act.

■■ The Government presses, however, that under § 315(b) the records of the Selective Service System shall be conclusive as to whether an alien was relieved or discharged from military duty because he was an alien. However, such records are conclusive only as to matters as to which the board had jurisdiction.[6] It is beyond cavil that the board had no power in 1942 to consider, much less to pass upon, any application by an enemy alien for relief from military service. Petitioner then was an enemy alien and the confusion which seems to have surrounded his application for deferment and the board's admitted error in regarding petitioner as a neu-

tral alien did not vest it with authority not granted by statute. The board's action in delivering to petitioner, and accepting from him, Form 301 which was authorized for use only in the case of neutral aliens was void and without effect; its purported grant of exemption upon his application was entirely beyond its jurisdiction and a nullity. So too was petitioner's application for relief from military service void and without legal effect.[7] As an enemy alien he had no right to such relief; neither did the Board nor any other agency have the right to grant the requested relief to him.[8]

Apart from the fact that the local board was without statutory power to grant the exemption to an enemy alien, it disregarded the rule or regulation issued by the National Headquarters of the Selective Service System with respect to applications for exemption. This required it when an application for relief from military service was made by an alien in filing Form 301 to "first determine whether or not he is a citizen or a subject of a neutral country. * * * If the local board finds that he is not a citizen or subject of a neutral country, it will disregard the fact that he has filed a Form 301 and classify him in the same manner as any other registrant."[9]

Thus the board created the present situation by its disregard of instructions from Selective Service Headquarters and the Government now seeks to take advantage of it.

5. 50 U.S.C.A.Appendix, § 454(a).

6. Cf. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

7. Cf. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; Utah Power & Light Co. v. United States, 243 U.S. 389, 408-409, 37 S.Ct. 387, 61 L.Ed. 791; The Floyd Acceptances, 7 Wall. 666, 19 L.Ed. 169.

8. Petition of Ajlouny, D.C., 77 F.Supp. 327.

9. Local Board, Release 112, issued by National Headquarters of the Selective Service System on March 16, 1942, which

also provided: "(5) (d) Unless a registrant is a citizen or subject of a neutral country the filing of an application by an alien for relief from military service (Form 301) has no effect whatever. A citizen or subject of either a cobelligerent country or an enemy country is given no right to be relieved from training and service, and if such a registrant files an Application by Alien for Relief from Military Service (Form 301), it is of no effect." Cf. In the Matter of A———, A-4844180, Administrative Decisions under Immigration and Nationality Laws of the United States, Vol. V.

144

I think it quite irrelevant that the petitioner was relieved of military duty. Indeed, it must be remembered that had he objected to military service as an enemy alien and in consequence been relieved of bearing arms, he would not thereby have been debarred from citizenship. Whatever one's personal views may be of his avoidance of service, such rights as the law accords him may not be denied simply because his conduct would readily be condemned by the many. Any diminution of his rights solely because his conduct did not find popular favor is a diminution of the integrity and the majesty of the law. Only in the exact and equal administration of the law can justice be done and public confidence in its administration maintained.

Petitioner's application for citizenship is granted.