In the Matter of the Petition for Naturalization of Ivar ELKEN.
No. 2271–555417.

United States District Court
E. D. New York.
May 8, 1958.

O'Donnell & Schwartz, New York City, Edith Lowenstein, New York City, of counsel, for petitioner.

Maxwell M. Stern, U. S. Naturalization Examiner, Immigration and Naturalization Service, Brooklyn, N. Y., in opposition.

RAYFIEL, District Judge.

The petitioner, a native and national of Estonia, who was lawfully admitted to the United States on August 3, 1947, made application for citizenship which was referred by the Immigration and Naturalization Service to a designated Examiner for preliminary examination. He recommended that the petition be denied on the ground that the petitioner was ineligible for citizenship by reason of the provisions of Section 315 of the Immigration and Nationality Act of 1952 (Title 8 U.S.C.A. Sec. 1426) and by Section 4(a) of the Selective Service Act of 1948 (Title 50 U.S.C.A. Appendix, Sec. 454(a)) because he had applied for, and had been granted, relief from military training or service on the ground of alienage.

Thereafter a final hearing was held before me. It disclosed that on October 28, 1952, when the petitioner felt his induction into the Armed Forces was imminent, he applied for voluntary induction. However, on November 4, 1952 he wrote a letter to his Local Draft Board in which he withdrew his application for voluntary induction. He gave as his reason for the withdrawal the fact that at the time of his request for induction he did not know that he was entitled to be classified in Class 4-C under

the treaty provisions between the United States and Estonia, as stated in Local Board Memorandum No. 39. The letter of November 4th stated: "By using my Classification 4-C, which I am entitled to have, I will have the opportunity to complete my education in college and then in time of war against communism I will be capable to serve the United States more effectively." The letter then went on to say "Really under the L.B. Memorandum No. 39 and the treaty between the United States and Estonia (Article VI, on Dec. 23, 1925) [44 Stat. 2379] I was not available for service not only on October 28, 1952, but at least since the end of war between the United States and Japan." He attached an excerpt of the treaty, which included Article VI thereof, in his letter.

On the basis of this letter the petitioner's Draft Board notified him that his application for voluntary induction was cancelled, and that he was placed in Class IV-C. Some time in 1953 he heard that persons who applied for exemption from military service on the ground of alienage were barred from citizenship, but he made no inquiry respecting the matter at his Local Board or elsewhere, and continued in Class IV-C until 1956, when, by Executive Order 10659, Selective Service Regulation Section 1622.42c was amended, withdrawing the right of permanent resident aliens to claim exemption under international treaties. On the basis of that change Local Board Memorandum 39 was rescinded, the petitioner was reclassified as 1A on June 5, 1956, and was inducted into the Armed Forces of the United States on July 5, 1956. The petitioner is now serving as a Specialist Third Class, attached to the Headquarters and Headquarters Detachment, Fort Jay, New York.

The petitioner claims that his letter of November 4, 1952 was not a claim for *exemption* from military service, but, rather, an application for a *deferment* thereof until he had completed his college education. He further contends that at the time he wrote the letter he did not know the consequences of his application for a classification of 4-C, that he was not warned or advised thereof by his Local Draft Board, and that he signed no form supplied by the Selective Service authorities containing such information.

The Government contends that the letter of November 4, 1952, is clear and unequivocal; that the petitioner wrote it voluntarily, requesting, not *deferment,* but *exemption* from service, as evidenced by his application for classification in IV-C, and by his statement that he "was not available for service." It points out, further, that although the letter states " * * * then in time of war against communism I will be capable to serve the United States more effectively," this country was at that very time engaged in war against Communist forces in Korea.

Doubt, if any, as to whether he sought a deferment or an exemption in his letter of November 4th can be best resolved by considering his acts and conduct since writing the letter. He did the research necessary to learn, as he did, that the 1925 Treaty between the United States and Estonia would subject him to the draft only in the event of war between the United States and a third nation. Yet, he prepared the said letter requesting IV-C classification when the United States was at war against Communist forces, and at a time when his service in our armed forces might have subjected him to active duty and the hazards incident thereto. Assuming, *arguendo,* that at the time he made his application he did not know that his claim for exemption would bar him from citizenship, he admitted that he learned that fact in 1953, and yet he made no inquiry and did nothing concerning the matter, thus remaining in Class IV-C until his Draft Board changed his classification.

The petitioner, in his brief, places great emphasis on the case of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 556, 95 L.Ed. 729, wherein the Court directed the naturalization of the plaintiff, a Swiss National, who had signed Revised D.S.S. Form 301 claiming exemption from military service. How-

ever, in that case, the plaintiff asked for and received the assistance of the Swiss Legation, which communicated with the Department of State to obtain the exemption. The Swiss Legation then wrote to the plaintiff, informing him that although he filed D.S.S. Form 301 *he would not waive his right to apply for American citizenship.* In that case, too, there was a finding by the District Court, accepted by the Court of Appeals, and by the Supreme Court, that the plaintiff signed the application for exemption "believing that he was not thereby precluded from citizenship, *and that had he known claiming exemption would debar him from citizenship, he would not have claimed it, but would have elected to serve in the armed forces.*" (Emphasis supplied.)

The Court there found that the plaintiff was "lulled" "into misconception of the legal consequences of applying for exemption"; and then went on to say, 341 U.S. at page 47, 71 S.Ct. at page 556, "In fact, because of the *misleading* circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all the circumstances of the case, we think that to bar petitioner, nothing less than an intelligent waiver is required by elementary fairness, Johnson v. U. S., 318 U.S. 189, 197, 63 S.Ct. 549, 553, 87 L.Ed. 704. To hold otherwise would be to *entrap* petitioner". (Emphasis added).

In my opinion the case at bar is analogous to the case of United States v. Kenny, 2 Cir., 247 F.2d 139, cited by the Government in its brief. There Kenny, an Irish National, made application for exemption from service on the ground of alienage. In that case, as in this one, he signed no form, supplied by the Draft Board, making the claim and there, too, he claimed that he was not warned of the consequences of his act. Further, Kenny

was serving in the National Guard at the time of his exemption and *voluntarily* made application for the withdrawal of his request for exemption. Judge Hincks, speaking for the Court, answered all of the petitioner's arguments, when he said, at page 143, "Nor does the statutory bar attach only when the application for exemption is made upon a prescribed form or when the applicant has been expressly notified of the bar prior to the making of the application. *The provisions of § 315 of the Immigration and Nationality Act may not be interpreted to mean that the condition on eligibility therein provided shall come into effect only when the application for exemption is made upon a prescribed form or after a warning as to its effect.* The provisions of S.S.S. Regulation § 1622.42(b), 32 C.F.R. (Rev.1954), were neither intended nor effective to restrict the plain provisions of § 315. Cf. Ballester v. United States, 1 Cir., 220 F.2d 399, 405, certiorari denied sub nom. Pons v. United States, 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741. *We know of no principle of law whereby an applicant for naturalization is immune from statutory provisions imposing conditions on eligibility for naturalization merely because the statute has not been called directly to his attention. \* \* \* Moreover, even after he had been directly notified of the statutory bar, he continued for over a year to enjoy exemption as an alien before he withdrew his request for exemption.*" (Emphasis supplied.)

In my opinion, the petitioner, by his letter of November 4, 1952, made application for *exemption* from service and *not* deferment. He retained this exemption for three years after he "heard", as he said he had, that persons making application for exemption would be barred from citizenship. The findings of fact and conclusions of law of the designated examiner are amply supported and the petition for naturalization is denied.