MATTER OF H—

In DEPORTATION Proceedings

A-8523020

*Decided by Board August 22, and October 13, 1960*

**Ineligible to citizenship—Exemption from military service—Effect of subsequent service in armed forces.**

(1) Bar to citizenship imposed by section 315 of Immigration and Nationality Act against alien who obtained exemption from military service in 1954 was not removed by his subsequent volunteer service in armed forces during peacetime period, 1956–58. (*United States* v. *Hoellger*, 273 F.2d 760, distinguished.)

(2) Termination of deportation proceedings to permit filing petition for naturalization will not be authorized where respondent's purpose is to obtain review by the naturalization court of the findings made in the deportation proceeding. Respondent has remedy available under section 10 of the Administrative Procedure Act to obtain judicial review of the deportation order.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry as an alien who was ineligible to citizenship (section 212(a)(22); 8 U.S.C. 1182(a)(22)).

BEFORE THE BOARD
(August 22, 1960)

DISCUSSION: On February 8, 1960, the Board dismissed re-respondent's appeal from a decision of the special inquiry officer holding him deportable and denying voluntary departure. The alien seeks termination of proceedings, contending that he is not ineligible for United States citizenship for having filed Forms SSS–130 and S–1120. As a result of filing these forms the Selective Service authorities placed him in class IV–C, an alien exempt from military service. Respondent later served two years in the United States Army. Counsel rests his motion for reopening and reconsideration on *Ceballos* v. *Shaughnessy*, 352 U.S. 599 (1957), and *United States* v. *Hoellger*, 273 F.2d 760 (C.A. 2, 1960).

Respondent, a native and citizen of Switzerland, was admitted to the United States for permanent residence as a quota immigrant on August 10, 1953. On May 19, 1954, he executed the forms referred

to above requesting exemption from military service. There has not been any suggestion that respondent did not comprehend the meaning and significance of the forms. He has testified that he served in the Swiss army in 1952, and, as a Swiss citizen, was not permitted to enter the armed forces of any other country. He consulted an official of the Swiss Legation in Washington, D.C., and was advised to claim exemption under the treaty between Switzerland and the United States. At that time treaty aliens were no longer exempted from service in the Armed Forces of the United States,[1] and there is no contention that this case is governed by *Moser* v. *United States*, 341 U.S. 41, 46 (1951).

Respondent remained in class IV-C until he requested induction into the armed forces on March 22, 1956, and was inducted into the army on June 19, 1956. He served honorably for two years until June 18, 1958, including a period of active duty abroad. He was placed in reserve status thereafter for a period of four years. Exhibit 6 indicates that the terminal date of his reserve obligation is June 18, 1962.

The respondent testified that after he entered the army and before he was transported overseas, the Swiss Army Sixth Division court-martialed him *in absentia* for his service in the United States Army and sentenced him to three months' imprisonment and the costs of the court-martial. He testified further that on January 4, 1958, while he was in Europe, he had his court-martial proceedings in Switzerland reopened. He succeeded in having the proceedings suspended or dismissed, because respondent and the court believed that he was going to become an American citizen within a reasonable time. He testified that he fears if he is returned to Switzerland, not having become a United States citizen, he would be again court-martialed for having served in the United States Armed Forces.

Respondent completed his two-year service in the United States Army while he was in Germany. He applied for separation from active duty status while overseas, in order to spend some time in Sweden with the family of his fiancee, now his wife. He was married in Sweden, and his wife was admitted to the United States for

---

[1] Section 101(a)(19), Immigration and Nationality Act; 8 U.S.C. 1101(a) (19): "The term 'ineligible to citizenship,' when used in reference to any individual, means notwithstanding the provisions of any treaty relating to military service, an individual who is, *or was at any time*, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76), or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts." (Emphasis added.)

permanent residence and is now living with him in this country. She testified on August 24, 1959, that she was expecting the birth of a child.

Counsel contended that respondent's reentry on September 10, 1958, did not constitute an "entry," because he returned to the United States under military orders. We sustained the special inquiry officer's holding that respondent made an entry for immigration purposes.

The principal contention made by counsel at this time is that respondent has never been "effectively relieved" from military service under section 315(a) of the Immigration and Nationality Act.[2] Counsel submits a letter dated May 19, 1960, directing respondent to report for further duty as a member of the United States Army Reserve at Fort Riley, Kansas, for the period July 3, 1960, to July 17, 1960.

There has been abundant litigation concerning applications of aliens in the United States for exemption from military service. There are only a few court cases where, following such application, the alien actually served in the Armed Forces of the United States. We have had a number of such cases, however. *Matter of S—*, 7—561 (B.I.A., Aug. 29, 1957), concerned a Swiss citizen in much the same position as respondent. He claimed exemption from military service and later was granted voluntary departure from the United States, and returned to Switzerland. He succeeded in reentering the United States from Switzerland, and testified that the consul in Switzerland told him that if he were willing to go into the service now "it would be all right." He served in the United States Army from March 5, 1956, until September 1, 1956, at which time he was honorably discharged from military service as "an alien without legal residence in the United States." He was made the subject of deportation proceedings, and the Board held that the alien was excludable for being ineligible to citizenship at the time of his last entry, and barred from citizenship by section 315 of the Immigration and Nationality Act, stating:

It is the administrative position that an alien who obtained exemption from military service on the ground of alienage is not ineligible to citizenship under section 315 nor 101(a)(19) of the Immigration and Nationality Act if he thereafter served honorably in the Armed Forces of the United States between September 1, 1939, and December 31, 1946 (during World War II,

---

[2] Section 315(a), Immigration and Nationality Act; 8 U.S.C. 1426(a): "Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the grounds that he is an alien, and is or *was relieved* or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States. (Emphasis added.)

thereby coming within the provisions of section 329 of the Immigration and Nationality Act), or became eligible for the benefits of the Act of June 30, 1953 (Public Law 86, 83d Cong., 1st Sess.), by active service in the Armed Forces of the United States between June 25, 1950, and July 1, 1955. The respondent who served in the United States Army between March 5, 1956, and September 1, 1956, is not eligible for naturalization on the basis of his military service.

. . . The subsequent military service of the respondent from March 1956 to September 1956 does not relieve him from the consequences of his act, inasmuch as Congress has not seen fit to declare that by virtue of such service the respondent would thereby become eligible for naturalization. . . .

We said in *Matter of S—*, *supra*, that court decisions do not appear to be uniform concerning whether the *Moser* decision has been superseded by section 315 of the Immigration and Nationality Act and whether this section had retroactive effect. Similarly, court decisions are not uniform as to whether subsequent service in the armed forces relieves the alien of his "permanent ineligibility" to become a United States citizen. There is a lot of discussion in cases where the alien did not actually serve. We find two cases where naturalization was denied to a petitioner in the armed forces: *In re Cerati*, 160 F. Supp. 531 (D.C. Cal., 1957), and *In re Elken's Petition*, 161 F. Supp. 823 (D.C. N.Y., 1958).

We find three cases where the alien actually served in the armed forces following an application for exemption, and his petition for naturalization was granted: *United States* v. *Hoellger*, 273 F.2d 760 (C.A. 2, 1960); *Petition for Naturalization of Felleson*, 169 F. Supp. 471 (D.C. Ill., 1958); and *Petition of Ahrens*, 138 F. Supp. 70 (D.C. N.J., 1956).[3]

The alien relies on *United States* v. *Hoellger*, *supra*, wherein the facts are similar to those now before us, except that Hoellger served after induction, whereas respondent served after volunteering. Hoellger was a German citizen who was classified IV–C by his draft board on September 11, 1952, on its own initiative. On May 13, 1954, his draft board, again acting on its own initiative, sent him an application for exemption which he filled out and returned. His IV–C classification was continued until February 9, 1955, when his draft board reclassified him I–A, because of abrogation of the treaty with Germany. Hoellger was inducted April 18, 1955, served his full term and received an honorable discharge on April 6, 1957. The parties agreed that his eligibility for citizenship was to be determined by section 315(a) of the Immigration and Nationality Act. The court stated that when Congress used the words in this section "relieved from service" it meant "*effectively relieved*":

---

[3] *Petition of Ahrens*, *supra*, is unlikely to be a precedent and is included here only for the sake of completeness. It is unique on its facts and also in its grant of citizenship on those facts.

. . . An alien who has actually served in the Armed Forces under compulsion of the executive branch of the Government cannot be said to have been effectively relieved from service. Moreover, the cases the Government cites do not support the proposition that under section 315(a) eligibility for citizenship is lost despite the fact of military service resulting from involuntary induction. . . .

In view of the above we hold that appellee was not relieved from service within the meaning of section 315(a); and we also point out that the principle of "elementary fairness" suggested in *Moser* v. *United States*, 1951, 341 U.S. 41, 47, 71 S.Ct. 553, 95 L.Ed. 729, may well be applicable here.

*Petition for Naturalization of Felleson*, *supra*, concerned a Swedish alien who made a claim of exemption on May 8, 1951, during the Korean War, asserting that filing this application was the only way he knew to obtain permission to visit his dying mother in Sweden. After his mother's death he volunteered, and "someone," not identified in the record, wrote "Cancelled"[4] across his exemption application, said the court. On April 1, 1952, Felleson was inducted into the United States Armed Forces and served two years, including combat action in Korea. The court reviewed the draft legislation, including the World War I enactments, and quotes *Moser*, *supra*, that Congress gave the alien "a choice of exemption and no citizenship, or no exemption and citizenship." The court stated that the Selective Service laws and regulations *have never dealt with the situation of an alien who applied for exemption and later became available for military service*, either through his voluntary choice or because of a change in the statute or regulations. The court said:

The picture is quite different, however, when the alien actually has become a member of the armed forces. It is utterly incongruous to suppose that a person who in fact has worn the uniform and has performed military functions should be denied the naturalization boon because of a relinquished exemption claim. A distinction doubtless could be made if immunity was enjoyed during hostilities and the military involvement took place after the shooting stopped. Cf. *United States* v. *Kenny*, *supra*. But it seems that when the military duty was undertaken under reasonably comparable conditions, the denial of citizenship benefits to a combat veteran cannot be justified in logic or equity or on the basis of legislative intent. Under such circumstances it might well be found that the applicant was not relieved from military obligations and that under the injunction of section 315 of the 1952 Act his access to naturalization benefits thus is not foreclosed. . . .

The court cited cases, including rulings under World War I legislation, and found, in addition, that Public Law 86 granting naturalization to aliens who served in the United States Armed Forces for at least 90 days between June 1950 and July 1, 1955, created benefits for Felleson, even though the law had expired before his peti-

---

[4] A similar notation appears on exhibit 4 of the present record: "Cancelled, 6/16/54, John L. Mokersky," the signature being that of the Chairman, Selective Service Board 102, Michigan.

tion was presented. The court declared that the military service, *coupled with the legislative dispensation*, extinguished the perpetual debarment from naturalization benefits, and granted the petition. Here is the weakness in respondent's case, and we pointed to the same flaw in *Matter of S—, supra.* He did not serve within the time provided by Congress in Public Law 86.

*In re Cerati,* 160 F. Supp. 531 (D.C. Cal., 1957), is one of the two cases cited by *Hoellger* where naturalization was denied to a petitioner in the armed forces. The court suggests that Cerati was "active" in seeking release from military service, and his term of service resulted from voluntary induction at a time when it suited his own convenience, not at a time chosen by his local board: "In contrast Hoellger served without protest at a time and under circumstances chosen for him by his local board" (footnote 2, p. 762).

*In re Elken's Petition, supra,* probably turned on the fact that the alien was *effectively relieved* from military service during the time the United States was engaged in the war in Korea, and was not inducted until nearly four years after he made application for exemption, at a date when this country was not actively at war.

There is a group of cases wherein the courts granted citizenship, even though the petitioner had filed an application for exemption from military service and never served in the armed forces. The rationale for the grant varies from case to case. *Felleson, supra,* refers to *Kiviranta* and *Caputo, infra,* as "rejected by an overwhelming array of authorities." This group seems to be the minority view: *Petition of Caputo,* 118 F. Supp. 870 (D.C., 1954); *Kiviranta* v. *Brownell,* 141 F. Supp. 435 (D.C., 1956); *United States* v. *Bazan,* 228 F.2d 455 (C.A. D.C., 1955); *Application of Mirzoeff,* 253 F.2d 671 (C.A. 2, 1958).

*Petition of Kutay,* 121 F. Supp. 537 (D.C. Cal., 1954); *Petition of Berini,* 112 F. Supp. 837 (D.C. N.Y., 1953) (held, alien had no knowledge under *Moser* rule); *Petition of Gourary,* 148 F. Supp. 140 (D.C. N.Y., 1957) (held, Austrian alien enemy given wrong classification by draft board); *Petition of Zumsteg,* 122 F. Supp. 670 (S.D. N.Y., 1954) (held, German enemy alien never made application for exemption); *Petition of Sally,* 151 F. Supp. 888 (D.C. N.Y., 1957) (held, under *Moser,* alien had no knowledge); *Petition of Planas,* 152 F. Supp. 456 (D.C. N.J., 1957) (held, under *Moser,* alien had no knowledge); *Petition of Ajlouny,* 77 F. Supp. 327 (D.C. Mich., 1948).

In each of the following cases the alien was not granted naturalization. He applied for exemption from service, although in many of them he attempted, following his original application, to volunteer, and was rejected as physically unfit: *Jubran* v. *United States,* 255 F.2d 81 (C.A. 5, 1958) (held, the alien "enjoyed the exemption

111

for a year"); *In re Skender's Petition*, 248 F.2d 92 (C.A. 2, 1957); *United States* v. *Kenny*, 247 F.2d 139 (C.A. 2, 1957) (application for exemption was made during Korean War; withdrawal of request for exemption was not until May 1955); *Velasquez* v. *United States*, 139 F. Supp. 790, affd. 241 F.2d 126 (C.A. 2, 1957) (Local Board Memo No. 112 was amended to permit a person situated as was petitioner to remove some of the stigma, but not the disability, by volunteering for induction); *Machado* v. *McGrath*, 193 F.2d 706 (C.A. D.C., 1951), cert. den. 342 U.S. 948 (1952) (Circuit Court states that request for induction by aliens who filed 301 should be made in an "Application for Voluntary Induction." "Draft boards were instructed not to surrender DSS Form 301. They were advised that the effect to be given Form 301 when followed by Form 165 was a matter to be determined by the courts. A notation to this effect was to be typed on the face of each Form 165 prior to the applicant's signature."); *Benzian* v. *Godwin*, 168 F.2d 952, 956-7 (C.A. 2, 1948), cert. den. 335 U.S. 886 (1948) ("disability outlives the repeal of the Act"); *Petition of Cuozzo*, 235 F.2d 184 (C.A. 3, 1956) (contains the much quoted dictum, "If, as has been suggested, administrative practice has been to refrain from insisting upon denial of citizenship to those aliens who do in fact serve their term in the armed forces, that administrative practice cannot alter the explicit direction of the statute"; this is dictum, because Cuozzo did not serve); *Ballester Pons* v. *United States*, 220 F.2d 399 (C.A. 1, 1955), cert. den. 350 U.S. 830 (section 315 constitutes "an absolute bar to citizenship"); *Brunner* v. *Del Guercio*, 259 F.2d 583 (C.A. 9, 1958) (Swiss national; no final decision); *Brownell* v. *Rasmussen*, 235 F.2d 527 (C.A. D.C., 1956), cert. dismissed 355 U.S. 859 ("and our decision in *Machado* v. *McGrath*, *supra*, also makes it clear that appellee's action in offering himself for induction while the war was still going on does not overcome the effect of his earlier application for relief"); *Kahook* v. *Johnson*, 273 F.2d 413 (C.A. 5, 1960) ("He enjoyed his deferment for seven months"; "The statute inexorably attached the disqualification"; "The bar which is imposed by the statute cannot be raised by the courts"); *Mannerfrid* v. *United States*, 200 F.2d 730 (C.A. 2, 1952), cert .den. 345 U.S. 918; *Petition for Coronado*, 132 F. Supp. 419; *Petition of Miranda*, 111 F. Supp. 481 (D.C. N.Y., 1953); *Petition of Mauderli*, 122 F. Supp. 241 (D.C. Fla., 1954); *Petition of Bergin*, 173 F. Supp. 883 (D.C. N.J., 1959) (court quoted *Felleson* with approval and distinguished it from *Bergin*); *Petition of Burky*, 161 F. Supp. 736 (D.C. N.Y., 1958) (Swiss national); *United States ex rel. Rosio* v. *Shaughnessy*, 134 F. Supp. 217 (D.C. N.Y., 1955) (exclusion case; alien found excludable under section 212(a)(22), 8 U.S.C. 1182(a)(22), as "alien ineligible to citizenship"); *Petition of Carvajal*, 154 F. Supp.

525 (D.C. Cal., 1957) ; *Schenkel* v. *Landon*, 133 F. Supp. 305 (D.C. Mass., 1955).

Regarding respondent's Swiss court-martial, a similar contention was made in *Petition of Fleischmann*, 141 F. Supp. 292 (D.C. N.Y., 1956). A citizen of Switzerland signed a Form 301 on August 2, 1942, and later petitioned for naturalization alleging "duress." The duress, said the court, consisted of the fact that petitioner, like all Swiss citizens under 40 years of age, was subject to court-martial or imprisonment under the Swiss Federal Military Penal Code providing for imprisonment for a Swiss citizen entering foreign military service without the permission of the "Federal Council." The court ruled that *Moser* did not apply and held that even if this constituted duress, there was no reason why it should relieve him of the burden of having chosen exemption. The petition was denied. Fleischmann did not serve at any time, of course, as did respondent.

Respondent was "effectively relieved" from military service for a period of two years. This is not a case where he was relieved from service until a period of active military hostilities had ceased. However, the alien delayed his induction until he had made up his mind that it was his intention to remain in the United States permanently, and until it was convenient for him to serve. As the court stated in *Cerati*, nothing in the statute "would indicate that the Congress intended that an exempted alien may regain his eligibility for citizenship by service in the armed forces at such time as he sees fit. . . . The facts in this case show that petitioner deliberately and consciously elected to take the step which shut the door to future citizenship."

Respondent did not serve at a time chosen by his draft board, as did Hoellger, but at a time chosen by himself. He is not a combat veteran, as was Felleson, who served within the time indicated by Congress in Public Law 86.

Certainly, this discussion indicates that there is authority on both sides. It is the view of this Board that, because Congress did not extend the benefits of the Act of June 30, 1953 (Public Law 86, 83d Cong., 1st Sess.) to persons serving in the armed forces after July 1, 1955, Congress did not intend that military service during peacetime, following an application for exemption from military duty, would make the applicant eligible for naturalization. Being ineligible for citizenship, respondent is mandatorily excludable. There is no good reason to deport respondent, who has served honorably in the armed forces of two countries, and who now has a family in this country. He should be allowed the privilege of voluntary departure.

113

*Order:* It is ordered that the respondent's motion for reconsideration and reopening be denied.

*It is further ordered* that the order of the special inquiry officer of October 13, 1959, be and is hereby withdrawn.

*It is further ordered* that the alien be permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time, and under such conditions as the officer-in-charge of the district deems appropriate.

*It is further ordered* that if the alien does not depart from the United States in accordance with the foregoing, the order of deportation be reinstated and executed.

## BEFORE THE BOARD
### (October 13, 1960)

**DISCUSSION:** On August 22, 1960, this Board denied respondent's motion to withdraw the order of deportation and for a reopening. In denying that motion we reviewed the applicable laws and judicial authorities. We concluded that respondent is not eligible for naturalization, according to the weight of authority, and we are bound by the demonstrated Congressional intent. He was, therefore, deportable at time of entry. We indicated, however, that there are court decisions on both sides, that respondent has served honorably in the armed forces of two countries, and now has a family in the United States. We withdrew the order of deportation and granted him voluntary departure.

Counsel states that a private bill was introduced in Congress in respondent's behalf on August 23, 1960, which, if enacted, will terminate proceedings and permit respondent to proceed toward naturalization. Counsel requests that the present proceedings be terminated for the limited purpose of permitting respondent to file his petition for naturalization in the United States District Court at Detroit, Michigan, and to have such petition heard and finally determined by the Court, citing *Matter of B—*, 6—713 (1955), and *Matter of T—*, 7—201 (1956).

The Board has the authority to take the action requested by counsel, but the authority has been sparingly exercised in accordance with the Attorney General's decision in *Matter of B—, supra* (Dec. 7, 1955). Counsel desires adjudication by the United States courts of the order of deportation and the Board's order, but it is unnecessary to terminate proceedings to obtain this review. An action may be instituted pursuant to section 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C. 1009, and the general jurisdictional provision of the Immigration and Nationality Act of 1952, 66 Stat. 230, 8 U.S.C. 1329. See *Ceballos* v. *Shaughnessy*, 352 U.S. 599 (1957),

114

footnote 1; *Schleich* v. *Butterfield*, 252 F.2d 191 (C.A. 6, 1958), cert. den. 358 U.S. 814.

Section 10 of the Administrative Procedure Act, 5 U.S.C. 1009(d), provides that, to the extent necessary to prevent irreparable injury, the "reviewing court . . . is authorized to issue all necessary and appropriate process to postpone the effective date of any agency action or to preserve status or rights pending conclusion of the review proceedings."

It is clear that respondent may repair to the courts for judicial review, as the record now stands, even though the route is not yet clear for a petition for naturalization. Under the circumstances, the Board will deny the pending motion.

**ORDER:** It is ordered that respondent's motion for termination of these proceedings for the limited purpose set forth above be and is hereby denied.

*It is further ordered* that the request of the Immigration and Naturalization Service to be represented at oral argument of this motion be and is hereby denied.