**UNITED STATES of America**

v.

**Mohammed Ateek KHAN.**

**Crim. No. 23375.**

United States District Court,
E. D. Pennsylvania.

Dec. 3, 1971.

forth in a one count indictment under 50 U.S.C. App. §§ 454 and 462—failing to perform a duty required by the Selective Service Act in refusing to submit to induction. The court finds the defendant not guilty for the reasons summarized below.

## FINDINGS OF FACT

The following facts have been stipulated to by counsel:[1]

1. Mohammed Ateek Khan is a permanent resident alien from the Fiji Islands as of April 29, 1966, having entered the United States as a temporary visitor on November 2, 1964.

2. Defendant registered for Selective Service in 1966 at the age of twenty-three.

3. On November 1, 1966, a Classification Questionnaire, (Form 100), was mailed to the registrant to his then current address.

4. A completed Questionnaire was returned to the Local Board on February 6, 1967.

5. At Series III of Form 100, entitled "Marital Status and Dependents," the registrant indicated he gave partial support to his mother, father, thirteen and fifteen year old brothers, in the amount of $1000.00 out of $3000.00 income.

6. At Series IV of Form 100, entitled "Registrant's Family," he listed seven sisters and brothers, six live in Fiji, one brother lives in Canada, all are over twenty-one years of age; all but one is older than the registrant.

7. At Series V, entitled "Occupation," he indicated that he had been a dental technician since January 1967 and works for Resigno Dental Laboratories.

8. Registrant did not complete Series VIII for Conscientious Objector.

9. At Series IX, entitled "Education," he stated he was a part-time student at Philadelphia Community College.

Louis Bechtle, U. S. Atty., Faith Whittlesey, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward H. Weis, Defender Assn. of Philadelphia, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

MASTERSON, District Judge.

The defendant, Mohammed Ateek Khan, was tried before the Court on a waiver of jury trial. The charge is set

---

1. To dispel any doubt, any of the following facts which are qualified by the words "testified that" are accepted by the Court as true.

10. On February 16, 1967, at a meeting of the Local Board, Khan was classified 1–A by a 3–0 vote. He was notified of his classification on February 17, 1967, and advised of his appeal rights and rights of personal appearance. At that time, he had ten days within which to seek a personal appearance or appeal.

11. There is nothing in the Selective Service file to indicate that the Defendant sought a personal appearance or appeal within the ten days permitted.

12. On April 17, 1967, the Local Board received a Form 109 from Philadelphia Community College indicating that Khan was an evening student from September 28, 1965, through January 21, 1966, and took seven credit hours. He was also currently enrolled taking three credit hours.

13. On April 28, 1967, an Order To Report on May 11, 1967, for Pre-Induction Physical Examination was issued. He was ultimately examined at the Armed Forces Examining and Entrance Station on August 7, 1967, and was found acceptable.

14. In the meantime, on June 14, 1967, the Local Board received a letter from the Defendant's then current employer, Morris Foxman, D.D.S., requesting a 2–A deferment on registrant's behalf. Said letter states as follows:

Dear Sirs:

Mr. Khan is a dental technician who works for me. He is a fine type of young man. I have always had a minimum of two dental technicians. Unfortunately, one of them has an incurable ailment; and will not be back to work. This creates a situation where Mr. Khan has become an indispensable necessity,

We have a large group of people, and I believe that it would be to the detriment of the health of so large of (sic) people. Inasmuch as dental technicians would place me in a position, wherein no work could be turned out. This would not be to the advantage of the people at large.

If you believe that the above situation warrants a deferment for some period of time, I believe that it would be a great help to many parties concerned.

Thank you very much. I am Sincerely, Morris Foxman DDS.

15. On June 15, 1967, the Local Board considered the registrant's classification again with the letter of Dr. Foxman before it. He was again classified 1–A. A Notice of Classification and rights of personal appearance and appeal were mailed to him on June 16, 1967. Although the thirty day appeal period was not effective until June 30, 1967, the notice given Defendant at this time permitted him thirty days within which to appeal.

16. On June 23, 1967, Foxman wrote a letter of appeal to the Local Board reiterating his position once more. Khan was not notified by the Local Board of this appeal. Khan did learn from Foxman that an appeal had been taken on his behalf.

17. On August 28, 1967, the Selective Service file was forwarded to the State Headquarters for transmittal to the Appeal Board. On the document entitled "Check Sheet for Appeals," Question Number 6 states, "Did the registrant request appearance before Local Board within ten days period?" *Typed in an answer* appears the word "yes."

18. The Appeal Board classified Khan 1–A on November 1, 1967, by unanimous vote of 3–0.

19. The registrant and his employer were advised of the Appeal Board action on November 1, 1967, and November 2, 1967.

20. On November 22, 1967, the Order to Report for Induction on December 5, 1967, was issued.

21. The Delivery List for December 5, 1967, shows four names being submitted to the Armed Forces Examining and Entrance Station of which Mr. Khan was the second name and the oldest registrant being ordered. This was to fill a call on the Local Board for two inductees.

22. The registrant called the Local Board and spoke to Mrs. Warr, the Executive Secretary, on November 27, 1967. The substance of the conversation was summarized for the file. The summary indicates that Khan told Mrs. Warr that he wanted to speak to the "Board of Directors," that he had to get his affairs in order, that he would not report on December 5, 1967, that he had a lawyer, that he had dependents at home abroad, and that the money from the Army would not be enough. The summary also indicates that Mrs. Warr advised him of the availability of legal help for his personal affairs, and that he should write to the Local Board with his message since she couldn't convey the message. Mrs. Warr also told him that if he did not report for induction he would be reported to the United States Attorney as delinquent.

23. On November 29, 1967, the Local Board received a letter from Foxman, his employer, reiterating his position and requesting "re-examination of the case" and provided his phone numbers if the Local Board wanted to speak to him.

24. On December 1, 1967, the Local Board received a letter from the registrant's father with the following information and requesting the Local Board to reconsider his son's case:

. . . I am over sixty-three years of age. My wife is over fifty years of age. My youngest son Ayub Khan is aged fifteen and my youngest daughter Jaibun Nisha is aged eleven.

We are a poor family now with Atik our only pillar of support. Both the youngest children are at school and all their expenses are being borne by my son Atik. My wife is very sick and has been needing constant medical attention with Atik as our support. Both my wife and I are in poor state of health and the news of this drafting will affect his mother greatly and may have very serious consequences on her health. We are in a position to give you any further evidence you may need in reviewing this case.

25. That same day, Khan called the Local Board, checking the receipt of his father's letter. He requested Mrs. Warr not to write his father that he had to leave on December 5, but rather say the Appeal Board considered the case and Khan was turned down.

26. By the testimony of Mrs. Warr, on December 1, 1967, she telephoned each of the three members of the Local Board and read the letters from Foxman and Khan's father, together with a verbal review of the file, to each member. Each member separately indicated that there was no new information to warrant reopening. She further testified that if two of the members had indicated the file should be reopened, she would have requested a postponement of induction from State Headquarters.

27. On December 1, 1967, letters were sent to Khan's father and employer indicating that no further consideration would be given to the file. Carbon copies of these letters were sent to registrant. Mrs. Warr testified that no meeting of the Local Board was scheduled between December 1, 1967, when Khan's father's letter and Dr. Foxman's reconsideration letter were received, and the date of induction, December 5, 1967.

28. On December 5, 1967, Khan reported to the Induction Station, was processed and refused to be inducted.

29. Defendant worked as a dental technician. His specific duties were making impressions, bridges, dentures, etc. Foxman is a treating dentist and sees an average of twenty patients a day.

30. Defendant testified that in 1967 he sent two paychecks out of four each month, approximately $200 a month, to his family in Fiji.

31. Defendant testified that he had a high school education in Fiji and had attended dental technician school in the United States prior to becoming a permanent resident.

32. Defendant's family in Fiji resided on a sugar cane farm of eight to twelve acres. Defendant testified that

because of a drought the income for the family was $500.00, but may have been as much as $800.00, in 1967. The family income has increased to approximately $800.00 to $1000.00.

33. In 1967, all farmers in Fiji suffered from drought and their income was in the range of $800.00.

34. Money from crops on the family farm went to a bank which distributed the fund to pay off a debt to the bank and to creditors.

35. Defendant's family in Fiji consists of Mother, Father, two younger brothers and a younger sister, an older sister with three children whose husband is in jail, and older brother and his family of four children living in a separate house on the farm, (this brother works on the farm). He has one older brother living in Vancouver, British Columbia, Canada.

36. Defendant testified that no other sister or brother contributed to the family.

### DISCUSSION

This is a unique case which squarely presents an inequity in the Selective Service Regulations which does not appear to have been tested by any court previously. The constitutionality of the conscription of aliens seems to be well established,[2] and we do not question this premise. We think it is perfectly obvious, however, that an alien should be eligible to receive any deferment or exemption to which any other registrant would be entitled. Surprisingly, we discover that this is not so.

The Selective Service Act of 1967, 50 U.S.C. App. § 456(h) (2), provides in part:

". . . The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Services (1) of any or all categories of persons in a status with respect to persons (other than wives alone, except in cases of extreme hardship) dependent upon them for support which renders their deferment advisable . . ."

The President's Regulation appears at 32 C.F.R. § 1622.30(a) and provides in relevant part:

"In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his wife, divorced wife, child, parent, grandparent, brother or sister who is dependent upon him for support, or (2) to any person under 18 years of age or a person of any age who is physically or mentally handicapped whose support the registrant has assumed in good faith: *Provided,* That a person shall be considered to be a dependent of a registrant under this paragraphs *only when such a person is either a citizen of the United States or lives in the United States, its Territories, or possessions . . .*" (Emphasis Added).

We must decide whether depriving this dependency exemption to those whose dependents are not United States citizens or are outside the United States is a classification which can be squared with the Constitution.

In Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the Supreme Court made the following observation in weighing the constitutional validity of a classification made by the federal government:

"The Fifth Amendment, which is applicable in the District of Columbia, does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states.

---

2. See United States v. Ryba, 441 F.2d 1137 (3rd Cir. 1971); Brownell v. Rasmussen, 98 U.S.App.D.C. 300, 235 F.2d 527 (1956), cert. dismissed 355 U.S. 859, 78 S.Ct. 114, 2 L.Ed.2d 66 (1957); Petition of Skender, 248 F.2d 92 (2nd Cir.), cert. denied, 355 U.S. 931, 78 S.Ct. 411, 2 L.Ed.2d 413 (1957); United States v. Rumsa, 212 F.2d 927 (7th Cir.), cert. denied, 348 U.S. 838, 75 S.Ct. 36, 99 L.Ed. 661 (1954).

But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process." 347 U.S. at 499, 74 S.Ct. at 694.

See also Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964). The Supreme Court has also made it clear that lawfully admitted resident aliens are entitled the equal protection of the laws of the State in which they reside. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971.)[3] In that case, in holding that state statutes that deny welfare benefits to resident aliens or to aliens who have not resided in the United States for a specific number of years are violative of the Equal Protection Clause, the Court recognized that:

". . . 'classification based on alienage, like those on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority . . . for whom such heightened judicial solicitude is appropriate . . . the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits." 403 U.S. 372, 91 S.Ct. 1852 (citations omitted).

■■ Giving the classification in the Selective Service Regulation the close scrutiny it demands, we conclude that the discrimination against resident aliens whose dependents are living outside the United States is so unjustifiable as to be violative of due process. We have been presented with no justification for the distinction between aliens and citizens in the legislative history of the Selective Service Act, and our own research has disclosed no articulated reason for the distinction. The Government tries to justify the classification by arguing that "the protection against induction because of dependency is not designed for the registrant himself, but for the protection and welfare of the dependent," and "dependents who are not citizens or residents are not the legitimate concern of the United States."[4] We refuse to accept this narrow view of the exemption. It is clear to us that Congress intended that the registrant be protected from conscription when his family was dependent on him for support. We fail to see how the Government's argument that "there is no discrimination as to Khan," meets the constitutional objection to the regulation when all other registrants are entitled to a III–A classification if they prove a dependency situation which is different only in that they are fortunate enough not to be separated from their dependents by national boundaries.

We realize that Congress has imposed a similar limitation on claims for dependents under the income tax laws. See 26 U.S.A. § 152(b) (3). Even if this discriminatory classification can be justified by the administrative difficulties encountered by the Internal Revenue Service in documenting dependency claims,[5] we fail to see how these reasons have any relevance to the Selective Service laws. It is obvious that out of the many resident aliens who work in the United States and pay income tax to the federal government, a small minority are subject to the draft and are in a posi-

---

3. See also Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) ; Truax v. Raich, 239 U.S. 33, 39, 36 S.Ct. 7, 60 L.Ed. 131 (1915) ; Takahashi v. Fish & Game Commission, 334 U.S. 410, 420, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948).

4. Government's Memorandum In Opposition To Motion for Judgment Of Acquittal, p. 23.

5. See Barr v. Commissioner, 51 T.C. 693 (1969) ; Schinasi v. Commissioner, 53 T.C. 382 (1969).

tion to make a dependency claim, and the fact that we can find not a single case in which the regulation at issue here was challenged by a registrant with a foreign dependent is indicative that it has not been brought into play to any great extent.

An argument could be made that there is no equal protection or due process violation because all registrants are being treated equally in that even an American citizen would not be able to claim a foreign dependent. For example, defendant would face the same problem in claiming the exemption if he had become an American citizen. We think it is clear that most of the registrants who will be put in this position are aliens, but even if a citizen of the United States were at trial we would still hold that there is no rational basis for disallowing a dependency claim.

Finally, the Government argues that even if the regulation is invalid, it was not applied to defendant's claim because the local board denied the III–A classification *on its merits*. To support this contention, the Government points to the testimony of the executive secretary of the board who stated that the board members based their decision not to allow the classification solely on the claim's merits rather than defendant's alien status (N.T. 65). This is a strange argument in that it is clear that the defendant could not have been given the III–A classification under the present regulation. Further, there is no explanation in the record of the case which would indicate the reason for the denial of the exemption, and we will not rely on the executive secretary's recollection as to what the board members had in mind. Since the board might have relied on an improper ground for denying the exemption, we cannot approve defendant's induction order. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); Clay, a/k/a Ali v. United States, 403 U.S. 698, 703–705, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). The issue is insignificant, however, since it is clear that the board was *compelled* to apply a regulation which, we have held, denied defendant due process of law under the Fifth Amendment.

Defendant's Motion for a Judgment of Acquittal will be granted. The above shall constitute our conclusions of law.